## JOHNSON COUNTY *v.* PATTERSON.

### Opinion delivered January 19, 1925.

1. COUNTIES—EMPLOYMENT OF ATTORNEYS—A county judge is authorized to contract with attorneys to represent the county in resisting a claim based on alleged fraudulent road warrants.

2. ATTORNEY AND CLIENT—EMPLOYMENT—CONSTRUCTION OF CONTRACT.—A contract employing attorneys to "do and perform any and all matters necessary to defend against and defeat" a certain claim against the county "in the courts or otherwise" *held* broad enough to cover legal services, whether in defending suit or otherwise, by which the claim was finally defeated.

3. ATTORNEY AND CLIENT—RIGHT TO COMPENSATION.—An attorney advising the county judge to cancel certain road warrants and thereafter allowing the matter of claims thereon to rest in order that the payee might not be stirred to take an appeal or bring suit before the statute of limitation expired, *held* to have given correct advice, and to be entitled to compensation under a contract to perform all matters necessary to defeat such claims.

Appeal from Johnson Circuit Court; *J. T. Bullock,* Judge; affirmed.

*Sam Rorex,* for appellant; *J. J. Montgomery,* of counsel. .

If the contract involved here can be said to be valid, it simply means that counsel were employed and paid a retainer, future remuneration contingent upon the institution of suits by the company. The testimony however discloses another and entirely different purpose from that expressed in the contract, and discloses that the motive for canceling the warrants of the company was purely political, thus bringing case within the rule announced in the case of *Oglesby* v. *Fort Smith,* 119 Ark. 567. See page 573 on the question of employment of additional counsel.

*Tessie Mae Billings,* for appellees.

It is said in the case cited by appellant that the county court has power to employ counsel when, in his judgment, the interests of the county demand it.     119 Ark. 567. See also 128 Ark. 498. The employment of Patterson is not denied, nor that he made numerous

investigations of the facts and issues involved, advised with Judge Baskin in relation thereto, nor that, after his employment, he refused employment by the adverse party, and at all times held himself in readiness to represent the county's interest whenever necessary. The proof is undisputed that Basham advised with reference to the cancellation, and that road warrants such as these are "warrants" within the meaning of the statute providing for calling in county warrants. 163 Ark. 455. And that warrants were barred five years after maturity. 54 Ark. 168. The services were rendered, but "readiness to perform is sometimes equivalent to performance." 39 Ark. 340.

WOOD, J. This is an action by the appellees, Basham and Patterson, against the appellant for the sum of $1,015, which claim is bottomed on the following contract:

"As county judge of Johnson County, Arkansas, hereby retain and employ Hugh Basham and G. O. Patterson as attorneys for Johnson County, Arkansas, to represent said county in a claim held against it by the Dixie Culvert Company, and hereby fully authorize, empower and direct my said attorneys to do and perform any and all matters necessary to defend against and defeat said claim. And for their services in that behalf hereby pay unto them the sum of $25 each as a retainer, and further agree that the county of Johnson will also pay said attorneys, in addition to the retainer, a sum equal to one-fourth of the claim held by said company, for their further services as such attorneys in making defense to said claim in the courts or otherwise. And the said Hugh Basham and G. O. Patterson hereby accept said employment, acknowledge receipt of said sum of $25 retainer, and agree to give to the defense of said claim their best attention. (Signed) C. H. Baskin, county judge of Johnson County, Arkansas."

The action was instituted by the filing of the claim, duly verified, and exhibiting therewith the above con-

tract. The answer denied that the appellees had rendered any services thereunder, and set up that, prior to August, 1916, the Dixie Culvert Company furnished the appellant certain materials amounting in the aggregate to more than $4,000; that, in August, 1916, road warrants were issued covering the indebtedness, which were subsequently called in by C. H. Baskin, the then county judge, for reissue, which warrants were by him declared fraudulent and canceled on August 11, 1917; that these warrants, at the time of their cancellation, were a valid and subsisting claim against the appellant, but no suit had been instituted against the appellant for the amount thereof; that, approximately eight months after the cancellation of the warrants, the alleged contract of the appellees was signed by the then county judge; that there was no consideration whatever for such contract; that the claim for services growing out of such contract was filed for allowance on April 13, 1923, more than five years after the alleged contract was entered into, and that therefore such claim is barred by the five-year statute of limitation, which appellant pleads.

The testimony of Judge Basham, for the appellees, was to the effect that he was retained by Judge Baskin, county judge of Johnson County, soon after his election in 1916, to recover what Judge Baskin considered a lot of fraudulent scrip that had been issued. He was employed because the prosecuting attorney could not give those matters the attention they needed. Witness' contract with the county judge was that he was to have one-fourth of the amount recovered, and the resistance of the payment of the warrants that had been issued to the Dixie Culvert Company was included in his employment. These warrants were identified by the witness, and introduced in evidence. They were drawn on the general road fund, and amounted in the aggregate to the sum of $4,167.62. They were presented to the county court, under an order that had been made by Judge Baskin, calling in all the county scrip for reissue. Each of the warrants had indorsed on its face, "Canceled

as fraudulent, August 11, 1917. C. H. Baskin, County Judge.'' At the time the warrants were issued, Judge Montgomery was the county judge, and they were issued a short time before his retirement from office, two of them about the close of his term. Witness was employed by Judge Baskin to resist the payment of these and other warrants claimed by him to be fraudulent, because witness had been county judge eight years, and Baskin thought witness was pretty well posted in regard to such matters, and wanted the services of witness to assist him in resisting payment of what he deemed fraudulent county warrants. Witness advised Judge Baskin that the warrants issued in favor of the Dixie Culvert Company were embraced within his order calling in the county warrants, and that their presentation in obedience to the call gave the county court jurisdiction over the subject-matter, and that the order canceling these warrants was within the court's jurisdiction. The county judge consulted with witness a number of times during his administration concerning these warrants. The culvert company was talking about bringing suit to try to establish and reinstate these warrants that had been declared fraudulent and canceled. Its agent came in a time or two to investigate concerning the reinstatement of these warrants before its right to appeal had expired. Judge Baskin talked to witness concerning it, and witness told him not to bother anything about it until the time for the appeal was up. Witness wanted the time for the appeal by the culvert company to expire, as he feared that a suit might be brought against the county before the five-year statute of limitation had run. Witness did not consider that the appellees had any claim against the county for the resistance of the payment of these warrants until the expiration of the statute of limitation. He was holding himself in readiness all the time to defend any suit that might be brought after the five-year statute had run. When the five years expired, witness decided that the fee due him under the contract had been earned, because he claimed these war-

rants had, at that time, been defeated. Witness was asked if Judge Baskin had entered into a written contract of employment with him, and witness answered that Judge Baskin had informed witness that he had employed Patterson to assist witness in the matter of resisting the claim of the culvert company and signed the written contract on April 21, 1918, *supra,* which witness identified and introduced in evidence. This contract was executed something like a year and a half after Judge Baskin went into office. It was delivered by the county judge to witness and Patterson and was accepted by them. Witness and Patterson had been ready and willing, at all times since they had been retained by Judge Baskin, to do anything necessary, in witness' judgment, to defeat the allowance of the claim, and had advised with the county judge all the time about the matter. No appeal was ever taken from the order of the county court canceling the warrants of the culvert company, and no suit was ever brought. Attorneys on different occasions would come to Clarksville and investigate it, and, upon investigation, decided they didn't have a case, for some reason, and no suit was brought. Witness' contention was that the claim of the culvert company was barred after five years from the date of the warrants, and absolutely barred at the expiration of one year for appeal from the order of cancellation. Witness didn't want any suit brought about it until the five years was out, and therefore said very little about it, except in conference with Judge Baskin. Suit was not brought on the contract of employment with witness and Patterson prior to April 13, 1923, because witness didn't consider their fee was earned until the claim was absolutely barred. Witness' services were being continuously rendered, but were not fully rendered until that time, and witness didn't have anything done that might cause the matter to be stirred up and to cause the culvert company to bring suit until the five-year statute had run. That was witness' idea of the best way to proceed to defeat the claim. Judge Baskin's contention in regard

to the claim of the culvert company was that the property purchased from the company a short while before he went into office, upon which property its claim against the county was founded, was worthless; that he couldn't use it, and it was never used for the county. He denied that the county owned it, and refused to have anything to do with it.

Witness Patterson testified that he was employed by Judge Baskin to assist Judge Basham in resisting the claim and in preventing its allowance in the court. Judge Baskin informed witness that he had agreed with Judge Basham to pay him one-forth of the amount of the claim for his services in resisting payment of same. Witness told Judge Baskin that, if it was agreeable with Judge Basham for witness to assist him, he would accept employment on the terms mentioned, and split the fee with Judge Basham. After the scrip had been canceled by the county court, and before the time ran out for the appeal, witness received a letter from a firm of attorneys in Little Rock, wanting to retain witness to represent the culvert company and take an appeal, or whatever steps witness thought necessary to protect its rights. Witness replied that he had been employed by the county to resist the allowance of the claims, and therefore could not accept the employment by the culvert company. Witness and Judge Basham and Judge Baskin discussed the matter two or three times before the time for appeal ran out. Witness and Judge Basham held themselves in readiness at all times to represent the county, and had made it known to everybody having an interest in it that they were representing the county. Witness had advised other attorneys, who had been to Clarksville looking into it, that he was representing the county. Some time in 1918 Judge Baskin had opposition, and it was suggested that it would be better to put their contract in writing, as Judge Baskin might go out of office, and that Judge Basham would have nothing but a verbal contract for their employment. The contract in evidence was then reduced to writing about six months after wit-

ness' employment. Witness was spoken to by a banker in Little Rock, asking if witness would assist in getting the claim of the culvert company allowed, and agreeing to pay witness a nice fee if he would do so, but witness informed this banker and every one else. that he was employed to resist the claim. He and Judge Basham had advised with the county judge, and informed him of their views and what proceedings they would take if suit were brought to establish the validity of the scrip. The payment of the fee called for by· the contract, in addition to the retainer, was not ·contingent upon the claim being filed and contested in court; it was contingent upon the claim being disallowed or finally defeated—never being allowed as a claim against the county. Witness was asked if he had a conversation with Judge Montgomery, after he had filed his claim for a fee, in which witness stated that he never did anything in the matter—that he had almost forgotten about it, or words to that effect. Witness replied that he didn't think he had any such conversation, but did have a number of conversations with Judge Montgomery, trying to get him to allow witness' claim or to pass on it.

Judge Montgomery testified, for the appellant, that he had been county judge of Johnson County up to the latter part of 1916, and again since the first of January, 1921. The first he knew of the contract with Judge Basham and Patterson was when they filed their claim. Patterson talked with witness soon after it was filed, and witness told Patterson that he would disallow the claim. Patterson told witness that he didn't do anything in the matter, and had forgotten about it until Judge Basham called his attention to it a short time before the contract was filed. Two carloads of metal culverts were bought from the culvert company by witness in the spring of 1916. The county had no money to pay warrants at that time, and the company was told it would have to wait. After witness went out of office, the culverts purchased from the culvert company were hauled out and used by Judge Baskin on the highways.

Witness knew of his own personal knowledge that those culverts were used by the county. No claim had ever been filed, but attorneys for the company had been to Clarksville several times, wanting the claim allowed. The canceled warrants were sent to the county clerk in a letter, which is as follows:

"As per our 'phone conversation today, I am inclosing herewith Johnson County warrants as follows (giving numbers and amounts). Kindly file these for reissue, and mail us a receipt. Thanking you in advance for your kind attention to this matter, we are, yours very truly, Dixie Culvert & Metal Company, by W. J. Hearn."

There had been no suit filed in any of the courts for any claim—no action brought to collect them in any of the courts that witness knew of. The first that witness knew that Basham and Patterson were interested in the claims was when they filed their claim against the county for their fee for services. On cross-examination witness was asked: "After this claim was filed, I will ask you if two representatives of the company didn't come up here and ask you to allow the claim and discuss the matter with you? A. I think they have been here since this claim was filed. They have been here several times, and written me letters about it. Q. I will ask you if you didn't tell those men that you wouldn't allow it, for the reason that the county attorneys here had been hired to resist it? A. No sir. I didn't tell them that; I told them that you and Judge Basham had a claim filed over here for services in resisting that. Q. Was that one of the reasons why? A. I told them to go over there to the clerk's office and look it up and see for themselves. That is about all that was said. Q. How did you happen to tell them that attorneys had been employed to defend the matter, to resist the claim? A. I told them that because that claim was pending in the county court. Q. Were they interested in our claim? A. Not that I know of. * * * Q. Did you explain to them what our employment was? A. Nothing further than the contract. I showed them the contract. That it all I

knew about it.   Q.   How did you happen to advise them
or what was your purpose in advising them that we had
been employed in resisting the claim?   A.   My purpose
was that I didn't want to pay them for the culverts and
then pay lawyers a thousand dollars for resisting it.
Instead of having a claim of $4,000, run it up to $5,000."

No suit was ever brought, and no record of any
kind has ever been made except what is on the face of
those road warrants.   On being recalled, Judge Basham
testified that he went to the clerk of the county court
and told him, if any claim were filed against the county
to re-establish the warrants of the culvert company, to
let witness know; that witness intended to defend against
it, and, if they were allowed, witness intended to take
an appeal.   Witness got the impression that Judge
Montgomery would be friendly with the other side, and
that was his reason for going to the clerk and talking
with him about it, and not to Judge Montgomery.

Upon substantially the above facts the trial court,
sitting as a jury, found in favor of the appellees against
the appellant, and rendered a judgment in their favor
in the sum of $1,015, from which is this appeal.

The testimony of Judge Basham shows that he was
employed by the county judge to resist the payment
of certain claims against the county, which the county
judge considered fraudulent.   Among the outstanding
warrants was the claim of the Dixie Culvert Company,
amounting in the aggregate to over $4,000.   The county
judge desired to resist the payment of this claim, and
therefore employed the appellees, under the contract,
which is the foundation of this action, to resist the pay-
ment of such claim.   Judge Basham states that his
employment grew out of the fact that the prosecuting
attorney could not give these matters the attention
needed.   The amount and character of the claim involved
were sufficient to show that it was one of more than
ordinary importance, and, as the prosecuting attorney,
in the performance of his duties, could not give the claim
the attention needed, the county judge was authorized

to enter into the contract with the appellees to represent the county in the resistance of this claim.

The court was correct in finding, from the testimony of Judge Basham, that the contract was valid. *Oglesby* v. *Fort Smith,* 119 Ark. 567-572; *Spence & Dudley* v. *Clay County,* 122 Ark. 157; *Buchanan* v. *Farmer,* 122 Ark. 562; *Sumpter* v. *Buchanan,* 128 Ark. 498. We cannot concur with learned counsel for appellant in their statement "that every line of this contract shows conclusively that the sole purpose and intention of the county judge in making such contract was to pay the appellees for any future services rendered in making a defense to the claim in the event suit was brought." Such a construction of the contract is entirely too narrow, and would defeat its manifest purpose. Taking the contract by "its four corners," it was contemplated that the appellees, on their part, "should do and perform any and all matters necessary to defend against and defeat said claim" of the Dixie Culvert Company "in the courts or otherwise," and the county, on its part, in addition to the $25 paid the appellees as a retainer, was to further pay them a sum equal to one-fourth of the claim held by the culvert company. The contract was broad enough to cover whatever services the appellees rendered the county toward defending against and defeating this claim, whether those services were rendered in defending a suit brought to establish the claim, or otherwise, that is, in any other manner by which the claim was finally defeated.

Now, the testimony of Judge Basham shows that he advised the county judge the course to pursue with reference to these warrants, and the result proves that, by following his advice, these claims were finally defeated. Judge Basham, after investigating the matter, advised the county judge, in the first place, that these warrants were embraced in his order calling in county warrants for cancellation and reissue; that this gave the court jurisdiction to make the order, and that, when such warrants were presented, the court then had jurisdiction of the subject-matter, and could make the order

canceling the warrants. This advice was correct. *Wilkes.* v. *Bank of Augusta & Trust Co.,* 163 Ark. 455; *Allen* v. *Banster,* 33 Ark. 740. This advice was most important and exceedingly valuable from the viewpoint of defeating the claim of the culvert company. Likewise, after the order of the county court was made canceling the warrants, and after the warrants were marked canceled, it may also have been the part of wisdom for the county to let the matter rest and be forgotten, as far as possible, in order that the culvert company might not be stirred to action and an appeal taken from the decision of the county court canceling the warrants, and in order, if possible, that no suit be brought before the expiration of the five-year statute of limitation. The advice of Judge Basham along this line was also correct. *Crudup* v. *Ramsey,* 54 Ark. 168. The testimony of Judge Basham further shows he considered that his services in the way of directing the course of the county judge were continuous from the time of his employment, and that he did not consider his services ended and the contract performed until the warrants were barred by the five-year statute of limitation. He and Patterson at all times were ready and willing to defend any action that might be brought against the county to establish these claims, and to do all things necessary looking toward the repudiation of such claims, in compliance with the terms of their contract. To this end the testimony of Patterson shows that he refused offers of employment to represent the culvert company in the establishment of the claim, and that he informed all those who made inquiry concerning same and all who manifested an interest in the establishment of such claims that he and Judge Basham had been employed by the county to resist them, and would do so in fulfillment of their contract.

In *Jacks & Company* v. *Thweatt & Quarles,* 39 Ark. 340, Thweatt & Quarles, attorneys, had entered into a contract with Jacks & Company whereby they were to advise Jacks & Company in a case which the latter had against Phillips County, and they agreed to pay the

attorneys a fee of ten per cent. on all amount collected of the county on account of the county money, whether collected by suit or compromise. In an action by the attorneys against Jacks & Company, one of the defenses set up was a failure of consideration, in that the attorneys had never rendered any services under such contract. Upon this issue the proof was that the attorneys had at all times held themselves in readiness to perform their contract, but had never been called upon by Jacks & Company for any advice or assistance in the court. The adjustment of the matter between Jacks & Company and the county court was in the main upon the court's own motion. In that case we said: "In cases of this nature readiness to perform is sometimes equivalent to performance."

That principle would apply here, even if the appellees had atually rendered no service in the performance of their contract, but the testimony warranted the court in finding that they had actually rendered the services contracted for. The appellees earned their fee under the contract, and they must be paid. The trial court ruled correctly in so holding, and its judgment is therefore affirmed.