BOARD OF EDUCATION OF LONOKE COUNTY *v.* LONOKE COUNTY.

Opinion delivered June 16, 1930.

*George E. Morris* and *O. E. Williams,* for appellant.

*Guy E. Williams* and *Chas. A. Walls,* for appellee.

BUTLER, J.   On January 8, 1927, the Bank of Central Arkansas closed its doors on account of its insolvency. It was the county depository of Lonoke County, and was indebted to the county and its various school districts for public funds deposited with it in the aggregate sum of $111,150.50 secured by a bond upon which a number of citizens of the county were sureties, all of whom were then, and are now, solvent and collectively worth more than the amount of the liability arising in favor of Lonoke County on the depository bond.   On the day after the bank closed its doors the county judge of Lonoke County entered into a contract with C. A. Walls, an attorney, to represent the county in the collection of the bank's indebtedness.   On January 17th, following, the county court confirmed the action of the county judge by making an order appointing and employing C. A. Walls, wherein it was recited that he was to be paid a retainer fee of $500, and was to have a reasonable compensation for such services as might be performed in the matter of representing the county in the collection of the public funds, whether collected by suit, settlement, compromise or otherwise.   After considerable negotiation, Mr. Walls collected the majority of the indebtedness without suit, and the remainder was collected by suit instituted which suit progressed to final adjudication.   The entire amount of the county and school funds with accrued interest was collected from the sureties on the bond, which amounted in the aggregate to the sum of $113,505.94.   From this

sum was deducted the attorney's fee of $4,000 which was allowed him, and a further sum due the prosecuting attorney was also deducted, and the balance paid over to the county treasurer.

On the 7th day of January, 1929, the court made an order, which, after fixing and allowing the amount of the attorney's fee, among other things, provided that "the $4,000 paid to the said Chas. A. Walls should be paid out of the funds recovered in proportion that each fund bears to the total of $111,150.50 and the common school fund should be charged with $2,500.80 of said amount and the other funds should be charged with $1,499.20, making a total of $4,000 so paid." From this order the county board of education and the England Special School District prayed and were granted an appeal on the second and fifth days of July, respectively, which appeals were consolidated in the circuit court and by agreement transferred to equity. From the decree there rendered upholding the order of the county court is this appeal.

As stated in its brief, the appellants contend that the employment of the attorney was unnecessary, and the incurring of the $4,000 fee was a useless expenditure of the public funds. In disposing of this contention, it may first be said that the appellants are concluded by the recitals of the order appointing the attorney made by the county court on January 17, 1927, and entered of record by order *nunc pro tunc* on February 14, following, from which there was no appeal. This order made the finding that the county depository bank had closed its doors, and was in the process of liquidation by the State Bank Commissioner, and that at the time the depository was indebted for public funds in the sum of $111,150.50, demand for which had been made which was not complied with, thereby creating the default in the conditions of the depository bond, and that, because of the official duties with relation to the prosecuting attorney's attendance upon the terms of circuit courts in the district, the necessity arose for special counsel.

Aside from the conclusiveness of the findings of the above order, it is well settled that the matter of employment of special counsel rests within the sound discretion of the county court, which, while subject to review, will not be disturbed, unless it is shown that there was an abuse of such discretion, the presumption being that in any given case the court will not create an unnecessary expense, but will act for the county with that degree of prudence which careful business men exercise in relation to important affairs, and, even in cases where it is the duty of the prosecuting attorney to act, the court may employ other counsel when in its judgment the interests of the county and the matter involved are of sufficient importance to demand it. *Oglesby* v. *Ft. Smith, etc.,* 119 Ark. 67; *Buchanan* v. *Farmer,* 122 Ark. 562; and cases there cited; *Johnson County* v. *Patterson,* 167 Ark. 287. Without deciding that it was the duty of the prosecuting attorney to represent the county, there was testimony to the effect that he was not ignored, but that on the day the special attorney was employed, the prosecuting attorney was consulted, and he indicated that because of the press of official business the employment of special counsel was satisfactory; that his official duties required his presence in the court of a neighboring county at a regular term, and there were to be six regular terms of the courts in his judicial circuit to be held within the months of January, February and March. From this and the fact that the entire revenue of the county and its school was in jeopardy and a condition existed which reasonably excited great apprehension in the minds of the county judge and the citizens, it is apparent that immediate action was deemed necessary. Therefore, it cannot be said that the employment of the special counsel was unnecessary or unreasonable, notwithstanding the fact that the sureties on the depository bond were men of wealth and probity, since experience teaches that even men of this class are seldom ready to pay security debts that can be avoided, and that resourceful individuals have found, and

do frequently find, the means to escape liability or to greatly lessen it. If it is admitted that the county court had the authority to employ special counsel in matters in which the county has an interest which the appellants do not specifically deny and of which in proper cases there can be no doubt then that authority must extend not only to those matters in which the county has the primary and sole interest, but to those also in which that interest exists by reason of an obligation under which the county rests for the protection or enforcement of the rights of others.

In the instant case the county court, acting under the authority of law, concluded in the name of the county a contract with the depository bank and with its bondsmen whereby the public revenue, those belonging solely to the county and also the county school fund and the road fund, were surrendered to that depository for safe keeping and for payment on demand to the proper authorities. The county was obligated to see that the depository was a solvent institution, and its bond executed by responsible persons. As a necessary incident to the power to contract was the corresponding power (in the absence of some statutory limitation) to enforce the liability, not only as to the funds belonging solely to the county, but as to those which, as trustee for the use and benefit of the school fund and the various school districts, it had surrendered under its contract to the county depository. *Polk County* v. *Sherman,* 99 Iowa 60. But in this case, we think this authority springs not only from implication, but also from the express language of the statute under which the deposit was made in the depository bank. By the provisions of this act (act No. 208, Acts of 1907, and amendatory act No. 258 of the Acts of 1911), the county court of Lonoke County was directed to select in the manner prescribed a county depository for all the public funds of the county "including school funds and road funds," requiring the execution of a bond for an amount sufficient to cover the total revenue

of the county including road and school funds, to guarantee the safety of the deposits and their payment according to law. In this act as amended was the following provision: "And for any breach of said bond the county or any person injured may maintain an action in the name of the county to the use of the county or persons thereby injured." From this language it is apparent that the county had authority to take the necessary steps to protect the interests involved, and, on its failure or refusal to act, any one of the several school districts had such authority. The county court exercised its implied and express authority to protect said interests and employed counsel, which, as we have seen, was within its sound discretion. As the authority to take the necessary steps to enforce a right carries with it the right to employ counsel, so does the latter right include the power to compensate. 24 R. C. L. 597, § 51; *State v. Aven*, 70 Ark. 291; *Blount v. Baker*, 177 Ark. 1162. Therefore, the county court was justified in contracting with its counsel for a reasonable fee to be paid, and we are of the opinion that, in sustaining the fee fixed by the county court, the ruling of the court below was not against the preponderance of the evidence. The amount involved was large; the depository, one of the well-established and reputedly sound financial institutions, had just collapsed, entailing a probable loss of the county's entire revenue, and, while before then the sureties on its bond and the bank were thought to be solvent and responsible, confidence was shaken and grave uneasiness was felt of great and irremediable loss. The attorney employed was one of repute and standing, and the amount of his fee contingent to a considerable extent on the amounts recovered. His duties entailed a series of meetings with those interested, in which the interests he represented were opposed by several of the leading lawyers of the State whose duty it was to protect their clients by every method compatible with honor and to take advantage of every proper legal strategem. It was

necessary to engage in a protracted litigation, and because of the duties of special counsel he was forced to forego other profitable employment. He manifestly conducted the various negotiations, compromises, settlements, and litigations with skill and fidelity, for the entire sum with accrued interest was recovered. A number of reputable lawyers familiar with the transactions and with the value of the appellee's services, testified that the fee was a reasonable and proper one, and we cannot say that their opinion, or the finding of the trial court, in the light of the attendant circumstances, was unfounded or unjustifiable. *Jacks* v. *Thweatt*, 39 Ark. 340; *Johnson County* v. *Patterson*, *supra*.

The contention of the appellants most seriously made and insistently argued is that, if the necessity for the employment of special counsel and the authority of the county court is admitted, there was no authority to pay any part of the fee out of the school fund, but that all of it should have been paid out of the general revenue of the county. Indeed, it is their contention that "neither the county board of education nor the school districts could have used these funds to pay any part of the fee of special counsel employed by the county court to represent Lonoke County." This contention is unsound. To give effect to it would be impracticable, for, assuming that the several school boards had employed special counsel instead of the county, and it had been necessary to institute suits which proved to be expensive and protracted, but which would result in the recovery of all the school funds due, then, as the county was not interested and could not be made to bear the expense of litigation to which it was not a party, it is not reasonable to expect that any attorney could be found to conduct such litigation. In other words, to give effect to the contention of the appellants would be to say that "in a supposable case those who are charged with the administration of the school interests of a school district must stand idly by and lose all for want of power to save their rights

by the use of those means which must be employed by others under similar circumstances.'' It may also be said that the contention is inequitable for the reason that, where recovery is had for several, natural justice requires that the expense be borne by each in proportion to the benefits received. This view is not in conflict with article 14, § 2, of the State Constitution, which provides: ''No money or property belonging to the public school fund, or to this State for the benefit of schools or universities, shall ever be used for any other than for the respective purposes to which it belongs.'' The use made of the fund in the instant case was not to divert it or to use it ''for any other than for the respective purposes to which it belongs.'' It was used only to recover school funds and was a legitimate expenditure.

Our conclusion in this particular is supported by the case of *State* v. *Aven, supra*. In that case a firm of lawyers was employed to prosecute an action to recover a sum of money due certain school districts in St. Francis County. The firm collected the amount of the indebtedness and, after deducting its fee, paid the remainder to the county treasurer of said county. The treasurer charged himself with the amount actually received by him and made settlement accordingly. Suit was brought to set aside his settlement for fraud and to recover judgment against him and his sureties for the amount retained by the lawyers as a fee for their services. A decree was entered dismissing the complaint and judgment was rendered in favor of the defendants, from which decree the plaintiff appealed. This court, in affirming the decree of the trial court, said: ''The school districts were authorized to employ attorneys or ratify the employment of them in their behalf. * * * But the statutes authorize them to contract and to sue. As a necessary incident to this power, they have the right to employ attorneys to institute and prosecute actions in their behalf; and such attorneys are, of course, entitled to a reasonable compensation for their services.''

The case of *Taylor* v. *Matthews*, decided by the Court of Appeals of Georgia, February 24, 1912, and reported in 75 S. E. at page 166, is a case where the people had voted the local tax law. This law, as voted, was attacked in the courts, and attorneys were employed on behalf of the school districts who successfully resisted the efforts to set aside the law and afterward appeared before a committee of the State Legislature and argued against the passage of a local bill introduced for the purpose of abolishing the school district for which the local tax had been voted. The attorneys were paid a fee for their services out of the school funds and for expense of witnesses before the legislative committee, and suit was brought to recover the same on the ground that such payment was against that law which forbade the application of public school funds to any other than educational purposes. In upholding the legality of the payment of the attorney's fee and the traveling expenses of witnesses before the legislative committee which had been added to said fee and paid, the court said: ''It is true that public school money is a trust fund, and cannot be applied except for educational purposes, but it would never do to give so strict a construction to this language as to confine the expenditure to the payment of teachers and nothing else. All language is to be given a construction which will effectuate the purpose sought to be accomplished; and so, while money raised for the maintenance of a public school may in one sense be said to be money raised for educational purposes, it is not raised for all educational purposes, but only for the benefit of pupils in strictly public or common schools. * * * But, while the expenditure of public school funds is confined to public schools, we are of the opinion that in the conduct of the public schools the proper authorities (such as the trustees of a school district) may, in their discretion, make any expenditure of the funds which is absolutely necessary for the proper maintenance of the school intrusted to their charge. They might properly expend

a portion of the money in repairing or improving the school building, or in fitting it with proper appliances and conveniences. They might insure the school property against loss by fire, and pay the premium from the school fund. By a parity of reasoning we have no hesitation in holding that funds derived from local taxation within a school district may properly be expended by the trustees of the district in protecting or preserving the right of local taxation for educational purposes by the employment of an attorney, or in other legitimate expenses necessary for presenting their rights in the adjudication of the case.''

Since the county court was authorized to employ counsel for the recovery of the school funds, it follows under the authorities, *supra,* which are supported by sound reason, that the school funds recovered should bear their proportionate share of the attorney's fee, and that the decree of the court below so holding is correct and is therefore affirmed.