MAGNOLIA SCHOOL DISTRICT NO. 14 of Columbia County and Other Arkansas Public School Districts Similarly Situated, et al. *v.* ARKANSAS STATE BOARD OF EDUCATION, et al.

89-316                                                      799 S.W.2d 791

Supreme Court of Arkansas
Opinion delivered November 19, 1990

*Perroni, Rauls & Looney, P.A.,* by: *Samuel A. Perroni* and *Rita S. Looney,* for appellants.

*Steve Clark,* Att'y Gen., *Paul Cherry,* Asst. Att'y Gen., for appellee.

Special Justice SAM H. BOYCE. The appellants, Magnolia School District No. 14 of Columbia County and Arkansas Public School Districts Similarly Situated, et al. (Magnolia) are a class representing all school districts in Arkansas other than the Little Rock, South Conway County, and Nema Vista districts. They contend that the appellees, Arkansas State Board of Education (Board), et al., illegally paid costs ordered by the federal courts in school desegregation cases under authorization of Section 3 of Act 1048 of 1987 (Public School Fund Act). Magnolia sought a declaratory judgment that the act was unconstitutional and petitioned for injunctive relief against future payments, and for a return of the funds already wrongfully diverted.

The trial court denied the unconstitutionality of the Act, noting that it did not violate "equal protection" and that there was a legitimate state purpose and a rational basis for the payment of funds under the Act. The trial court specifically found Section 3 of the Act constitutional; however, it refused to order a refund of certain monies paid out of the Mutual Foundation Program Aid (MFPA) account and issued an injunction to prevent further misdistribution of these funds. The trial court also refused to order the state treasurer to refund the monies previously expended from the MFPA funds.

We review chancery cases *de novo, Lynch* v. *Brunner,* 294 Ark. 515, 745 S.W.2d 115 (1988), but do not reverse a chancellor's findings unless clearly erroneous. ARCP Rule 52(a).

Based on the record before us, we affirm the chancellor in his findings that funds spent pursuant to Section 3, Act 1048 of 1987 were constitutional expenditures. In addition, we find that the trial court was not in error in issuing an injunction to prevent misdistribution of the MFPA funds.

Magnolia first argues that any distribution of monies to the public schools outside of the MFPA formula proscribed by

Ark. Code Ann. § 6-20-301 — 319 (1987 & Supp. 1989) is contrary to statutory law and to our "mandate" in *Dupree* v. *Alma School Dist. No. 30*, 279 Ark. 340, 651 S.W.2d 90 (1983). We disagree. There is nothing in the statute that would indicate all distributions to the school districts must necessarily be allocated to the formula. In *Dupree*, we held that the then-existing formula for funding the various school districts in the state violated the equal protection provisions of the Arkansas Constitution. While we did mandate that a funding formula used by the state to distribute money to various school districts must conform to equal protections and standards and must provide the districts with "equal educational opportunity," *Dupree* did not mandate distributions under this formula to the exclusion of all other methods of distribution.

In this instance, the General Assembly included as part of the Public School Fund Act a line item appropriation to be used specifically to pay the federal court mandated costs of the Pulaski County desegregation cases. We find nothing inherently wrong with such an appropriation, this being only one of thirty-one total line items.

Even if the state could make distributions outside the statutory formula, appellant Magnolia further argues that the appropriation nonetheless violates equal protection and serves to deprive appellants of equal educational opportunity. *Dupree*, 279 Ark. at 347, 651 S.W.2d at 93. In other words, if the appropriation had not been made to the Pulaski County School Districts, appellants would have received these monies through MFPA and the Pulaski County School Districts benefitted from the appropriation to the detriment of appellants' district. In an attempt to bolster its case, the appellant Magnolia urges us to apply the strict scrutiny equal protection analysis by relying again on language in *Dupree* that the "right to equal educational opportunity is basic in our society." *Id*. We decline to do so. The state had an obligation to follow the orders of the federal court to provide the necessary funds for the desegregation of the Pulaski County School Districts. *See Missouri* v. *Jenkins*, ___ U.S. ___, 110 S. Ct. 1651 (1990) (state taxation law must yield to federally mandated desegregation efforts); *Cooper* v. *Aaron*, 358 U.S. 1 (1958) (the governor has no authority to nullify federal court order). As the trial court noted, following a federal court order is a legitimate, if

not compelling, interest, and the utilization of money from the public school fund for the purpose of funding desegregation efforts is rationally related to achieving that legitimate purpose.

The legislature has the inherent power to appropriate monies belonging to the State of Arkansas, and those funds should be expended in accordance with the legislative intent. It is the court's duty, as far as is practical, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. *Shinn* v. *Heath*, 259 Ark. 577, 535 S.W.2d 57 (1976). In this instance, the Board has expended funds in accordance with the expressed intent of the legislature.

█ Magnolia next argues that the funds spent pursuant to the appropriation on behalf of the Pulaski County School District violates Section 2 of Article XIV of the Arkansas Constitution in that under this provision, no monies belonging to the public school fund are to be spent other than for school purposes. Yet, some of the money from the appropriation went to pay attorney's fees and Magnolia contends that such payment is not for public school purposes. The trial court disagreed, relying on the *Board of Educ. of Lonoke County* v. *Lonoke County*, 181 Ark. 1046, 29 S.W.2d 268 (1930). Magnolia attempts to distinguish *Lonoke* on the basis that attorney's fees were utilized to perfect a recovery, as opposed to the diversion of school funds. Although this is a distinguishing feature, we note that the court in *Lonoke* relied primarily on *Taylor* v. *Matthews*, 75 S.E. 166 (1912), as authority for its holding and quoted extensively from *Taylor*, including the following:

> But while the expenditure of public school funds is confined to public schools, we are of the opinion that in the conduct of the public schools the proper authorities (such as trustees of the school district) may, in their discretion, make any expenditure of the funds which is absolutely necessary for the proper maintenance of the school entrusted to their charge. Likewise, we are willing to give broad discretion to those charged with the proper maintenance of our schools.

Further, in *Rainwater* v. *Hays*, 244 Ark. 1191, 428 S.W.2d 254 (1968), this court held that any use of school funds that results in benefits to school funds or property or aids in the stated purposes

for which these funds may be expended would not be an unconstitutional diversion." *Rainwater*, 244 Ark. at 1195, 428 S.W.2d at 257. Magnolia, argues that since there was no benefit to the public schools as a class, then the appropriation was unlawful. We take the opposite view. Here the monies appropriated were for the benefit of public education. Anytime the evils of segregation can be taken out of the school system, public education as an institution benefits. This money was appropriated specifically for that purpose, and the use of these monies, in part, for attorney's fees was necessary to achieve the purpose of the appropriation.

The trial court found that the Board had distributed money out of the MFPA fund without following the statutory formula for the distribution of these funds and issued an injunction to prevent further misdirection of the funds. This is uncontested on appeal. However, the court held that it was without authority to order the state treasurer to refund the money expended from MFPA funds as that would be tantamount to an action against the state. We agree.

Magnolia asserts that the trial court erred when it found it did not have authority to order the state treasurer to return the funds that were wrongfully taken from the MFPA fund and distributed outside the statutory formula. Relying on *Young* v. *Clayton*, 223 Ark. 1, 264 S.W.2d 41 (1954), the trial court found that doing so would be tantamount to a suit against the state because the funds have already been spent.

In *Young*, the plaintiffs were challenging the diversion of certain highway fund monies to the State's General Revenue Fund. This court refused to order the state treasurer to refund the diverted funds because plaintiffs failed to offer any proof that the money had not already been spent. The court held that the money still in the hands of the treasurer could have been refunded through an adjustment in the books. However, once the funds have passed outside the control of the treasurer, any such adjustment results in replacing funds already spent, and such an action would amount to a suit against the state. *Id. Young*, 223 Ark. at 7, 264 S.W.2d at 44.

Magnolia relies on *Chandler*, which directed the treasurer to return money to the Public School Fund that had been wrongfully

transferred to the Employer's Accumulation Account. This Court held that such an order was in harmony with *Young*.

Magnolia offered extensive proof indicating that there were, at time of trial, substantial sums of money in the Public School Fund and various other funds held by the treasurer. There was also proof indicating that the entire desegregation appropriation has already been spent. Magnolia argues that the money can be replaced from the Public School Fund or from some other fund in accordance with *Chandler*.

This, however, is distinguishable from both *Young* and *Chandler*. In both *Young* and *Chandler*, the money in question had been taken from one fund and placed and held in another. This was done, essentially, through accounting entries. The *Young* court refused to order a refund because there was no evidence to indicate that the diverted funds had not been expended. On the other hand, the *Chandler* court ordered a refund through a bookkeeping entry by the treasurer "to the extent the funds have not been disbursed." *Id.* Both cases involved fund to fund transfers.

That is not the case here. In this case, there was simply a disbursement (or a number of disbursements) from the MFPA fund to outside parties. Clearly, the money has passed outside the treasurer's control. Therefore, any attempt for refund would, indeed, be tantamount to paying a judgment out of State funds and would violate Article V, Section 20 of the Arkansas Constitution.

In sum, we affirm the chancellor.

NEWBERN and PRICE, JJ., not participating.