The Honorable Jay Bradford State Senator P.O. Box 8367 Pine Bluff, AR 71611-8367
Dear Senator Bradford:
This is in response to your request for an opinion on the following questions:
 1. Is there a constitutional provision in the Arkansas Constitution similar to the K-12 provision mandating equal funding that would deal with funding in the area of two-year colleges in higher education?
 2. Does the Fourteenth Amendment to the United States Constitution that provides for equal protection apply in funding situations such as this?
RESPONSE
Question 1: Is there a constitutional provision in the ArkansasConstitution similar to the K-12 provision mandating equal funding thatwould deal with funding in the area of two-year colleges in highereducation?
It is my opinion that the answer to this question is "no." There is no provision in the Arkansas Constitution that would apply to higher education similar to Article 14, Section 1, which places on the legislature the responsibility for maintaining a "general, suitable and efficient system of free public schools"[1] and which, together with the state equal protection guaranty, has been construed by the Arkansas Supreme Court to require equalization of funding for Arkansas school districts. Dupree v. Alma School Dist. No. 30, 279 Ark. 340,651 S.W.2d 90 (1983).[2]
The General Assembly is authorized under Amendment 52 to the Arkansas Constitution to provide for the establishment of community college districts as follows:
 The General Assembly may by law provide for the establishment of districts for the purpose of providing community college instruction and technical training. The General Assembly shall prescribe the method of financing such community college and technical institutes, and may authorize the levy of a tax upon the taxable property in such districts for the acquisition, construction, reconstruction, repair, expansion, operation, and maintenance of facilities therefor.
Ark. Const. amend. 52, § 1.
It seems clear that this provision does not in itself require funding equalization among community college districts. Nor, in my opinion, is there any separate constitutional requirement to this effect with respect to higher education. State funding of higher education institutions must, of course, conform to equal protection standards. But the mere fact of disparity in funding among institutions will not, in my opinion, alone support an equal protection claim under either the Arkansas or United States Constitutions.
It must be recognized in this regard that the rights in issue are those of the students who attend the institutions rather than the institutions themselves. Cf. Ayers v. Fordice, 879 F. Supp. 1419, 1449 (N.D. Miss. 1995) (involving, inter alia, a civil rights challenge to funding formula for state universities). Some showing of unconstitutional classification or favoritism of one class of persons over another will, I believe, be necessary to sustain an equal protection claim. An Arkansas court will, moreover, likely employ a "rational basis" test, rather than the more stringent "strict scrutiny" approach as long as no "suspect class" is involved,[3] when determining equal protection challenges concerning educational issues. Cf. Magnolia School District No. 14 v. Arkansas StateBoard of Education, 303 Ark. 666, 799 S.W.2d 791 (1990) (declining to apply strict scrutiny in equal protection challenge to state's payment of federally-ordered costs in school desegregation cases). Thus, if any conceivable rational basis exists which demonstrates the possibility of a deliberate nexus with state objectives so that the disparate treatment is not the product of utterly arbitrary and capricious government purpose and void of any hint of deliberate and lawful purpose, it will withstand an equal protection challenge. See generally Arkansas Hosp. Ass'n v.Arkansas State Board of Pharmacy, 297 Ark. 454, 763 S.W.2d 73 (1989). As is apparent, this is an extremely lenient test. Legislation is rarely struck down under this standard. It should perhaps also be noted in this regard that according to at least one federal court, "it is educationally sound to fund institutions according to the missions they fulfill in the State's system of higher education." Ayers v. Fordice, supra,879 F. Supp. at 1452.
Question 2: Does the Fourteenth Amendment to the United StatesConstitution that provides for equal protection apply in fundingsituations such as this?
See discussion above. As noted, it is my opinion that theFourteenth Amendment will not, per se, apply to require funding equalization.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] Ark. Const. art. 14, § 1 provides:
 Free school system. — Intelligence and virtue being the safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free public schools and shall adopt all suitable means to secure to the people the advantages and opportunities of education. The specific intention of this amendment is to authorize that in addition to existing constitutional or statutory provisions the General Assembly and/or public school districts may spend public funds for the education of persons over twenty-one (21) years of age and under six (6) years of age, as may be provided by law, and no other interpretation shall be given to it. [As amended by Const. Amend. 53.]
[2] In Dupree, the court held that the then-existing system for funding the various school districts in the state violated the equal protection and public education provisions of the Arkansas Constitution. Ark. Const. art. 2, §§ 2, 3 and 18; and art. 14, § 1. The court affirmed the chancellor's holding that there was no legitimate state purpose to support the financing system (under which property wealth was the major determinative of local district revenues), and that the system bore no rational relationship to the educational needs of the individual districts. 279 Ark. at 344-345. The court concurred with the trial court's view that "the educational opportunity of the children in this state should not be controlled by the fortuitous circumstance of residence. . . ." Id. at 345.
[3] Suspect classes have been identified in legislation based on race (Loving v. Virginia, 388 U.S. 1 (1967)), alienage (Graham v. Richardson,403 U.S. 365 (1971)), or national origin (Oyama v. California),332 U.S. 633 (1948)).