Mr. Raymond Simon, Director Arkansas Department of Education #4 Capitol Mall Little Rock, Arkansas 72201-1071
Dear Mr. Simon:
I am writing in response to your request for an opinion on the following question:
 May a public school use state funds or federal grant funds, if within the allowable expenditures of the grant, to purchase school uniforms for all students in the school?
You state that: "Delta College Preparatory School, a State Board of Education approved public charter school, is proposing to use federal grant funds or state funds to purchase school uniforms for all students in the school." You also state that: "[t]he uniforms are an integral of the school's educational program in that students must model appropriate student behavior in order to earn the uniform, and every student is expected to earn a uniform."
RESPONSE
In my opinion, under the facts you have described, the answer to your question is "yes."
Sections 6-23-101 to -601 of the Arkansas Code govern the establishment and operation of "charter schools" in Arkansas. Three types are authorized, "conversion charter schools," "open enrollment charter schools," and "limited charter schools." See A.C.A. §§ 6-23-201 to -207;6-23-301 to -507; and 6-23-601, respectively. There is nothing in these subchapters, however, that addresses the question of school uniforms.
A separate statute, applying to public schools in general, authorizes "uniform dress codes" in public schools. See A.C.A. § 6-18-102 (Repl. 1999). This statute sets out a legislative finding about the desirability of public school uniforms and details a procedure to be employed in adopting a uniform dress code, including submitting the question to the electors of the district. Subsection (e) of A.C.A. § 6-18-102 also provides, however, that: "Nothing in this section shall be construed to limit the ability of a school district or a particular school within a district to adopt and implement a school uniform policy. Any school district may implement a school uniform policy without submitting the issue to the electors of the district." This statute, however, does not address the expense of school uniforms and whether the district or a particular school may purchase uniforms for students, as opposed to requiring the students to purchase the uniforms themselves. As you note in your request for my opinion, I, and my predecessor have issued opinions on that subject.
In Op. Att'y. Gen. 98-224, my predecessor opined that "the provision of funds to some parents to assist in their purchase of uniforms does not result in an "illegal exaction" of taxes from those parents not provided funds. Quite to the contrary, the courts of some states have held that it is the assistance to indigent students itself which is constitutionally compelled." In Opinion 2000-230, I characterized Opinion 98-224 as concluding that "a school uniform is an "incidental" expense that may properly be charged to a parent." Nothing in these opinions suggests a public school may not bear the expense of uniforms itself, however. That question was neither posed nor addressed in Opinion 98-224 or 2000-230. Nor have I found any precedent addressing the propriety of a public school, or a "charter school" using public funds to purchase uniforms for all students. There are two generally applicable constitutional provisions that restrict the use of school funds to school purposes. In addition, the "public purpose doctrine," a common law constitutional precept, operates to prevent the expenditure of public funds for private purposes. In my opinion these provisions apply as well to the expenditure of funds by a "charter school." Such "charter schools," including "open enrollment charter schools" receive funds equal to the minimum state and local revenue per average daily membership as defined in § 6-20-303."See A.C.A. § 6-23-501 (Supp. 2001). Clearly, such schools are in receipt of state and local public funds.[1]
Art. 14, § 2 of the Arkansas Constitution provides that:
 No money or property belonging to the public school fund, or to this State for the benefit of schools or universities, shall ever be used for any other than for the respective purposes to which it belongs.
Article 14, § 3, which governs the use of local property taxes to support the schools, provides that:
 Provided, that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied.
See also Arkansas Constitution, Amendment 74 (b)(3) (requiring the "uniform rate" of twenty five mills to be used by the school districts solely for maintenance and operation of schools," defined as "such expenses for the general maintenance and operation of schools as may be defined by law.")
Thus to the extent the proposal involves the use of moneys arising fromad valorem taxation, or moneys belonging to the public school fund or to the State, these constitutional provisions will be applicable.
It was broadly stated in Rainwater v. Haynes, 244 Ark. 1191,428 S.W.2d 254 (1968) that: "any use of [school] funds raised from taxation that results in benefits to those funds or property or aids in the stated purposes for which these funds may be expended would not be an unconstitutional diversion." The applicable cases upholding various expenditures of school funds under these constitutional provisions each involve purposes related to the operation of the schools. See, e.g.,Rainwater v. Haynes, supra (payment of improvement district special assessments from school funds not unconstitutional); Magnolia SchoolDistrict No. 14 v. Arkansas State Board of Education, 303 Ark. 666,799 S.W.2d 791 (1990) (moneys spent to further Pulaski County desegregation not unconstitutional diversion); and Fayetteville School District No. 1v. Arkansas State Board of Education, 313 Ark. 1, 852 S.W.2d 122 (1993) (recoupment by the state of overpaid state educational moneys not an unconstitutional diversion).
The court in Magnolia also cited Taylor v. Matthews, 75 S.E. 166 (1912), which had previously been cited with approval in Board of Education ofLonoke County v. Lonoke County, 181 Ark. 1046, 29 S.W.2d 268 (1930), for the following proposition:
 But while the expenditure of public school funds is confined to public schools, we are of the opinion that in the conduct of the public schools the proper authorities (such as trustees of the school district) may, in their discretion, make any expenditure of the funds which is absolutely necessary for the proper maintenance of the school entrusted to their charge. Likewise, we are willing to give broad discretion to those charged with the proper maintenance of our schools.
303 Ark. at 670, citing 75 S.E. 166.
School officials will thus be afforded some measure of discretion by the judicial branch when the constitutionality of a school expenditure is questioned under the relevant constitutional provisions. In my opinion this discretion would apply with equal force to charter school officials, who are encouraged to use "different and innovative teaching methods." A.C.A. § 6-23-102(3).
The "public purpose doctrine," mentioned earlier, has been described as follows:
 The doctrine is a constitutional common law doctrine. It was discussed in Chandler v. Board of Trustees, 236 Ark. 256, 365 S.W.2d 447 (1963) as follows:
 No principle of constitutional law is more fundamental or more firmly established than the rule that the State cannot, within the limits of due process, appropriate public funds to a private purpose. A century ago the basic doctrine was simply stated in the leading case of Brodhead v. City of Milwaukee, 19 Wis. 624:" The legislature cannot create a public debt, or levy a tax, or authorize a municipal corporation to do so, in order to raise funds for a mere private purpose. It cannot in the form of a tax take the money of the citizens and give it to an individual, the public interest or welfare being in no way connected with the transaction. The objects for which money is raised by taxation must be public, and such as subserve the common interest and well being of the community required to contribute."
 Chandler, 236 Ark. at 258 quoting Brodhead v. City of Milwaukee, 19 Wis. 624. See also generally, Rubin, Constitutional Aid Limitation Provisions and the Public Purpose Doctrine, 12 St. Louis U. Pub.L. Rev. 143 (1993).
As stated in Op. Att'y. Gen. 92-179:
 Expenditures are lawful under this doctrine if they primarily inure to benefit school purposes. Conversely, such expenditures are unlawful if they primarily inure to the benefit of a particular individual or individuals.
You state in your opinion request that the "uniforms are an integral of the school's educational program in that students must model appropriate student behavior in order to earn the uniform, and every student is expected to earn a uniform." Based upon the particular facts you have recited, including the importance of the uniform in the charter school's curriculum, in my opinion a court faced with the question would be willing to give substantial discretion to the appropriate officials. SeeTaylor v. Matthews, supra. Although the provision of uniforms, at public expense, will admittedly inure in some degree to the private benefit of the charter school students, in my opinion the existence of some incidental benefit to private parties will not operate to defeat the expenditure where it primarily furthers a school purpose. See Op. Att'y. Gen. No. 2000-243, citing League of Women Voters of California v.Countywide Criminal Justice Coordination Committee, 203 Cal.App.3d 529,554 (1988) ("So long as a public interest is served, there is no unlawful expenditure of public funds even though there may be incidental benefits to private persons.") See also 1992 Iowa Att'y. Gen. Op. 179 (the propriety of public fund expenditures for uniforms and equipment should be dependent upon whether the activity is a part of the school's educational program and, if so, whether the wearing of the uniform or equipment is necessary in order to participate. If both of these tests are met, public monies may be used for the purchases.")
In my opinion, therefore, the answer to your question, under the particular facts you recite, is "yes."
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] You also inquire about the use of federal grant funds. I have not been provided with any information concerning the federal grant funds in issue and thus cannot come to any definite conclusion as to the legality of their expenditure for the described purpose. You state that the proposed expenditure would be within the terms of the federal grant. I am not in a position, however, without more information, to determine whether any state or federal law would be violated with regard to the expenditure of federal funds in this instance.