The Honorable Tommy Dickinson State Representative 711 Hodges Street Newport, AR 72112-2709
Dear Representative Dickinson:
I am writing in response to your request for an opinion on a question you have submitted on behalf of the Newport Special School District (the "District"). The superintendent of the District has reported the following facts:
 The school board recently received correspondence from the Newport Fire Department that an old unoccupied school building known as the Branch School was an unsafe building by the definition of the Arkansas Fire Prevention Code 2002, section 110. They described the building as unsecured, falling in, fire damaged, pest infested, and vandalized. They request we take action by either repairing and securing the building or elimination and removal.
 We have had a minority nonprofit organization contact us about the possible purchase of the building to be used primarily for the benefit of school age children and community center. They plan to work with the school district to provide students with an educational and recreational after school program, as well as provide services and programs to help promote positive character traits for students lacking adult role models, discipline, and parental involvement in school.
 Due to the school district currently having no need for the facilities and the significant amount of money it will cost to either repair or eliminate and remove, we would like to allow this organization the option to purchase for a minimal fee. They are aware of the property conditions and city requirements and have plans to immediately begin making the needed repairs.
In light of these circumstances, you have posed two questions I will paraphrase as follows:
 1. Does the Newport School District have authority to sell an abandoned school building to a nonprofit organization for a minimal fee?
 2. If the answer to Q1 is "no," can the District seek sealed bids as a method of disposing of the property and accept the highest bid received, regardless of its stated amount?
RESPONSE
With respect to your first question, the district may sell the building only if the consideration it receives for the sale is reasonable. In my opinion, a court reviewing the adequacy of consideration would likely take into account both that retaining the property would in itself constitute a financial drain to the district and, possibly, that the buyer of the property would commit to using it for educational purposes. With respect to your second question, although competitive bidding is normally considered an accepted means of assuring that a sale will yield fair market value for property, only a finder of fact acquainted with all of the circumstances could determine whether a particular sale was reasonable.
Question 1: Does the Newport School District have authority to sell anabandoned school building to a nonprofit organization for a minimal fee?
Section 6-13-620(12) of the Code (Supp. 2003) authorizes any school board to "[d]o all other things necessary and lawful for the conduct of efficient free public schools in the district." This statute is in accord with Ark. Const. art. 14, § 1, which directs that "the State shall ever maintain a general, suitable and efficient system of free public schools." As one of my predecessors noted in Ark. Op. Att'y Gen. No.2000-270:
 The Arkansas courts have long interpreted this statute [A.C.A. § 6-13-620] as allowing school boards wide latitude in governing their districts. See, e.g., Safferstone v. Tucker, 235 Ark. 70, 72, 357 S.W.2d 3, 4 (1962); Isgrig v. Srygley, 210 Ark. 580, 197 S.W.2d 39
(1946). See also Springdale Board of Education v. Bowman, 294 Ark. 66, 69, 740 S.W.2d 909, 910 (1987); Leola School District v. McMahan, 289 Ark. 496, 498, 712 S.W.2d 903, 905 (1986). The courts have further held that they will not substitute their judgment for that of a school board with regard to policy matters, unless the school board, in enacting the policy in question, abused its discretion or acted arbitrarily, capriciously, or contrary to law. Id. The court in Leola, supra,
explained "arbitrary and capricious" action by a school board as being action that is not supportable" on any rational basis." Leola, 289 Ark. at 498, 712 S.W.2d at 905. It should be noted that the party challenging the school board's policy has the burden of proving the board's abuse of discretion by clear and convincing evidence. Springdale, 294 Ark. at 69, 740 S.W.2d at 910.
Subject to the foregoing constitutional conditions, a school district is empowered by statute to "[p]urchase buildings or rent schoolhouses and sites therefor and sell, rent, or exchange the sites or schoolhouses." A.C.A. § 6-13-620(a)(3).
Applying the above standard, one of my predecessors concluded in the attached Ark. Op. Att'y Gen. No. 2001-102 that, notwithstanding the fact that a school board resolution and annexation ballot title purported to guarantee the continued operation of a school, the district board could close the school if there were a rational basis for doing so. However, my processor further opined that the board's discretion to dispose of district property is bounded by the terms of both Ark. Const. art. 14, §3, which provides that no tax levied to support a school district "shall be appropriated for any other purposes nor to any other district than that for which it is levied," and Ark. Const. art. 16, § 11, which provides that "[n]o tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose."
As one of my predecessors noted in interpreting Ark. Const. art. 14, § 3:
 The Arkansas Supreme Court in addressing this provision has held that any use of school funds that results in benefits to school funds or property or aids in the stated purposes for which these funds may be expended would not be an unconstitutional diversion. Magnolia School District No. 14 v. Arkansas State Board of Education, 303 Ark. 666, 799 S.W.2d 791 (1990), citing Rainwater v. Hays, 244 Ark. 1191, 428 S.W.2d 254 (1968). The court in Magnolia also cited Taylor v. Matthews, 75 S.E. 166 (1912), which had previously been cited with approval in Board of Education of Lonoke County v. Lonoke County, 181 Ark. 1046, 29 S.W.2d 268
(1930), for the following proposition:
 But while the expenditure of public school funds is confined to public schools, we are of the opinion that in the conduct of the public schools the proper authorities (such as trustees of the school district) may, in their discretion, make any expenditure of the funds which is absolutely necessary for the proper maintenance of the school entrusted to their charge. Likewise, we are willing to give broad discretion to those charged with the proper maintenance of our schools.
303 Ark. at 670, citing 75 S.E. 166.
In my opinion, any disposition of school district assets is the equivalent of "the expenditure of public school funds." As reflected in the passage just quoted, the court has held that expenditure of school funds must be "confined to public schools" and "absolutely necessary" for proper maintenance of the school in the discretion of the directors. Additionally, the court in Magnolia has stated that the expenditure must result in benefits to school funds or property or aid in the stated purposes for which the funds may be expended.
Applying the above standard, I believe that if the district board, in the reasonable exercise of its discretion in pursuing authorized educational goals, deems it necessary to divest itself of an abandoned building that it would otherwise have to demolish or to restore at significant cost, it would not be prohibited from selling the building. However, it could do so only in exchange for adequate consideration. Determining the adequacy of consideration will obviously entail undertaking a factual inquiry of the sort I am neither authorized nor equipped to conduct. However, the Arkansas Supreme Court has held that in certain circumstances "public advantage" can constitute adequate consideration. See City of Blythevillev. Parks, 221 Ark. 734, 255 S.W.2d 962 (1953). In this regard, I believe a reviewing court might well consider a commitment by the buyer to use the building "primarily for the benefit of school age children" to be an element of consideration. A court might further look more favorably upon a sale for "a minimal fee" if it deemed the district's retaining the property as prohibitively expensive. Again, only a finder of fact could make such determinations.
For your information, I am enclosing a copy of Ark. Op. Att'y Gen. No.96-169, in which one of my predecessors discussed the issues arising from a proposed sale of school district property for nominal consideration. In that opinion, my predecessor concluded:
 A contract or conveyance of school property is void if the conveyance is not made in good faith, or is fraudulent. Scott v. Magazine Special School District No. 15, 173 Ark. 1077, 294 S.W. 365 (1927) (sale of school property to private parties to conduct private school was within the discretion of the board absent a showing of fraud in the making of the contract).
Accord Ark. Op. Att'y Gen. No. 93-057. My predecessor further opined that a sale for less than adequate consideration might be challenged as an unconstitutional diversion of district funds. As suggested in the discussion above, even though nothing in the facts as you have described them suggests any bad faith or fraudulent intent on the part of the district board, the board must consider the adequacy of the proposed consideration in determining whether to proceed with the sale.
Question 2: If the answer to Q1 is "no," can the District seek sealedbids as a method of disposing of the property and accept the highest bidreceived, regardless of its stated amount?
As indicated above, I cannot definitively answer your first question because the issue of the adequacy of consideration is one of fact that only a court can answer.
I am likewise unable to opine categorically whether putting the building up for bid without imposing any minimum bid requirement would prove acceptable. In certain instances, the Code conditions the sale of public property upon entertaining competitive bids at no less than fair market value. See, e.g., A.C.A. § 15-58-203(a)(21) (authorizing the Director of the Department of Environmental Quality to sell state property under these conditions). However, no such statutory requirement applies to the sale of real property by a school district. Nevertheless, a school district's authority to sell property is bounded by the limited discretion discussed in my response to your first question. Even if the district's school board were legitimately to deem the property unsuitable surplusage that should be sold, the board in its fiduciary capacity would still be obliged to obtain the best price possible for the property. I appreciate that selling property by competitive bidding is generally considered a suitable way to fulfill that obligation. See, e.g., A.C.A. § 25-4-102(d)(2) (stating that competitive bidding on information technology resources will "assur[e] the state of the highest reasonable quality of resources at the lowest reasonable cost"). However, only a finder of fact acquainted with the circumstances of the sale and the true value of the property could determine whether a lowest-bid sale of district property has complied with the constitutional standard described above.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh