The Honorable Roy Ragland State Representative Post Office Box 610 Marshall, Arkansas 72650-0610
Dear Representative Ragland:
I am writing in response to your request for an opinion on "whether the Huntsville School District has the authority to donate a building located on the Middle School campus to a non-profit corporation for historical and community purposes." As background for your question in this regard, you note that the building has been condemned and costs the district approximately $25,000 per year to maintain and insure. You further report that if the district is unable to donate the property, it will likely schedule it for destruction. You state that "[t]here is great public advantage in releasing what amounts to a large drain on the school district's budget," and you ask specifically:
 Is it your opinion that a court might view freeing up educational money as adequate consideration for conveyance?
You have also presented the following questions concerning A.C.A. § 14-169-803 (Repl. 1998):
 Could you also please expand on Arkansas Code Ann. 14-169-803? Is a non-profit corporation eligible to conduct the urban renewal project or neighborhood development program, or must the project or program be run by the County? Are there any statutory or legal definitions for "urban renewal project" or "neighborhood development program" as contemplated by this statute? *Page 2 
RESPONSE
In my opinion, a drain on the district's budget as a consequence of maintaining the condemned building might be a relevant factor in determining the adequacy of consideration in support of a contract to sell the property below fair market value, but it most likely would not, standing alone, support a conveyance. In light of your reference to a donation for "community purposes," it may also be relevant to note A.C.A. § 6-21-108 (Supp. 2007), which sets forth certain purposes that the legislature has declared might warrant donating school district property to a "not-for-profit organization." The purposes include "providing community programs, social enrichment programs, or after-school programs for students who are from the school district or educating pupils from within the donating school district . . ."Id. at (b)(1)(C). I have no information upon which to gauge whether this statute might support the particular donation at issue.
In response to your second set of questions concerning A.C.A. § 14-169-803, a non-profit corporation in my opinion may contract with the county, or other public entity, to furnish services or facilities in connection with an urban renewal or redevelopment project as contemplated by this statute, but it may not separately conduct any such project. The terms "urban renewal project" and "neighborhood development program," although undefined by A.C.A. § 14-169-803, in my opinion refer to the activities under A.C.A. §§ 14-169-601 et seq. (redevelopment generally), 14-169-701 et seq. (urban renewal generally), and 14-169-801et seq. (acquisition of property for urban renewal) that may be conducted by housing authorities, urban renewal agencies, counties, and cities, all of which plainly are public bodies.
Question 1 — Is it your opinion that a court might view freeing upeducational money as adequate consideration for conveyance?
In view of your initial question whether the Huntsville School District might "donate a building located on the Middle School campus to a non-profit corporation for historical and community purposes," I interpret your question as being whether "freeing up educational money" that would otherwise be spent maintaining and insuring the building might alone qualify as nonmonetary consideration sufficient to support such a conveyance.
In my opinion, the answer to this question is likely "no." As I and my predecessors have previously opined, school districts are barred from gratuitously donating their *Page 3 
property. See Op. Att'y Gen. Nos. 2008-091 and 2004-213 (and opinions cited therein). In the words of my immediate predecessor: "I believe a school district is obligated to use all reasonable efforts to obtain fair market value or some other adequate consideration that serves a school purpose in connection with any transfer of property the school board deems surplus." Op. 2004-213 at 4. I agree with my predecessor that a drain on the district's resources as a consequence of retaining unused property might factor into the analysis of whether a sale below market value is supported by adequate consideration. Id. See also Op. Att'y Gen. Nos. 2004-056 and 2003-349. But in my opinion, such a drain on the budget will not alone constitute adequate consideration. Instead, I believe there must be some other element of consideration evidencing the direct advancement of students' educational interests. This necessarily follows, in my opinion, from the principle that "any disposition of school district assets is the equivalent of `the expenditure of school funds.'" Op. Att'y Gen. 2003-349 at 4, quotingMagnolia School District No. 14 v. Arkansas State Board ofEducation, 303 Ark. 666, 670, 799 S.W.2d 791 (1990) (holding that expenditure of school funds must be "confined to public schools" and "absolutely necessary" for proper maintenance of the school in the discretion of the directors.)[1] *Page 4 
Reference should perhaps be made in this regard to A.C.A. § 6-21-108, which sets forth certain purposes that the legislature has declared might warrant donating school district property to certain designated recipients. Subsection 6-21-108(b) states in pertinent part:
 (b)(1) If the board of directors for a school district determines that any real estate owned or controlled by the school district is not required for the present or anticipated future needs of the school district and that the donation thereof would serve a beneficial educational service for the pupils of the school district, then the school district is also empowered and authorized to donate property or any part thereof to a publicly supported institution of higher education, a technical institute, a community college, a not-for-profit organization, or any entity thereof for any of the following limited purposes:
 (A) Having the real property improved, upgraded, rehabilitated, or enlarged by the donee;
 (B) Providing a publicly supported institution of higher education or a technical institute or community college with the donated property in which to hold classes for students who are from the school district or to educate pupils from within the donating school district even if students from outside the school district might also benefit; or
 (C) Providing community programs, social enrichment programs, or after-school programs for students who are from the school district or educating pupils from within the donating school district even if other persons in the community or students from outside the school district might also benefit.
A.C.A. § 6-21-108(b)(1) (Supp. 2007).
I believe the purposes identified by this statute are clearly reasonably related to the goal of providing a "general, suitable and efficient system of free public schools." Ark. Const. art. 14, § 1.Accord Op. Att'y Gen. 2005-300 (opining that the purposes under A.C.A. § 6-21-108(b)(1)(C) "clearly qualify as effecting a `public *Page 5 
advantage' to education consistent with the provisions of Article 14, § 1," citing City of Blytheville v. Parks, 221 Ark. 734, 255 S.W.2d 962
(1953), see n. 1, supra, wherein the Arkansas Supreme Court held that in certain circumstances "public advantage" can constitute adequate consideration.)[2]
You have presented the question of whether the Huntsville School District may donate the school building to a non-profit corporation "for historical and community purposes," but you have provided no specific information regarding these purposes. Accordingly, I have no information upon which to gauge whether A.C.A. § 6-21-108 might support the particular proposed conveyance.
Question 2 — Could you also please expand on Arkansas Code Ann.14-169-803? Is a non-profit corporation eligible to conduct the urbanrenewal project or neighborhood development program, or must the projector program be run by the County? Are there any statutory or legaldefinitions for "urban renewal project" or "neighborhood developmentprogram" as contemplated by this statute?
Subsection 14-169-803 provides as follows:
 Any school district owning lands and buildings within the boundaries of any existing urban renewal project or neighborhood development program, or within the boundaries of any such project or program that may be constituted in the future, is authorized to donate and dedicate to the governing board of any such urban renewal program or neighborhood development project as may be created any surplus lands or buildings owned by it if the lands or buildings are found by the board of the school district to be surplus *Page 6 
to its present needs or the lands and buildings are unsuitable for further use by the school.
A.C.A. § 14-169-803 (Repl. 1998).
As you can see, this statute provides authority for a school district to donate surplus property to the "governing board of [an] urban renewal program or neighborhood development project."[3] In my opinion, the term "governing board" refers to the governing bodies of housing authorities, urban renewal agencies, counties, and cities, all of which plainly are public bodies. The terms "urban renewal project" and "neighborhood development program," although undefined by A.C.A. § 14-169-803, in my opinion refer to the activities under A.C.A. §§ 14-169-601 et seq. (redevelopment generally), 14-169-701 et seq. (urban renewal generally), and 14-169-801 et seq. (acquisition of property for urban renewal) that may be conducted by these various public entities. This conclusion reasonably follows from general rules of statutory construction, which provide that: 1) in construing any statute, courts will place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole,State v. Sola, 354 Ark. 76, 118 S.W.3d 95 (2003); and 2) statutes relating to the same subject are in "pari material" and should be read in a harmonious manner, if possible, Monday v. Canal InsuranceCompany, 348 Ark. 435, 73 S.W.3d 594 (2002).
With regard to your particular question concerning the conducting of urban renewal or redevelopment projects, I believe it is clear that the powers and authority established by these statutes are conferred upon the public housing authorities and urban renewal agencies, as well as counties and cities. See A.C.A. § 14-169-902 (Repl. 1998) (providing that "[m]unicipalities and counties, acting through their governing bodies, are granted all the powers and authority granted to housing authorities and to urban renewal agencies by §§ 14-169-201 — 14-169-205,14-169-207 — 14-169-225, 14-169-227, 14-169-229 — 14-169-240, 14-169-601
— 14-169-609, 14-169-701 — 14-169-713, 14-169-801, 14-169-802, and14-169-804.") These various public entities are authorized, however, to contract with private *Page 7 
persons or agencies for the furnishing of services or facilities in connection with urban renewal and redevelopment projects. Id. and A.C.A. § 14-169-217 (Repl. 1998).
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
DM:EAW/cyh
[1] Opinion 2003-349 addressed the question of whether the Newport School District could convey for a nominal fee to a non-profit organization an abandoned school building that was in violation of the fire code and that would either need to be razed or extensively repaired. The opinion reasoned as follows:
 . . . I believe that if the district board, in the reasonable exercise of its discretion in pursuing authorized educational goals, deems it necessary to divest itself of an abandoned building that it would otherwise have to demolish or to restore at significant cost, it would not be prohibited from selling the building. However, it could do so only in exchange for adequate consideration. Determining the adequacy of consideration will obviously entail undertaking a factual inquiry of the sort I am neither authorized nor equipped to conduct. However, the Arkansas Supreme Court has held that in certain circumstances "public advantage" can constitute adequate consideration. See City of Blytheville v. Parks, 221 Ark. 734, 255 S.W.2d 962 (1953). In this regard, I believe a reviewing court might well consider a commitment by the buyer to use the building "primarily for the benefit of school age children" to be an element of consideration. A court might further look more favorably upon a sale for "a minimal fee" if it deemed the district's retaining the property as prohibitively expensive. Again, only a finder of fact could make such determinations.
Op. Att'y Gen. 2003-349 at 5.
I agree in all respects with this analysis.
[2] It should perhaps be noted that subsection (b)(1)(A) of section 6-21-108, standing alone, would suggest that a donation to a non-profit might be justified solely on the basis of "[h]aving the real property improved, rehabilitated, or enlarged by the donee[,]" that is, without any commitment on the part of the donee to use the property for educational purposes. In my opinion, the statute may not constitutionally authorize such a donation. I also note, however, that subsection (b)(1) identifies the purposes under subsections (A) through (C) as "limited." In my opinion, this might be construed as evidence that the legislature intends for the donated property's improvement or rehabilitation to be in furtherance of the educational purposes identified in (A) through (C). This interpretation is reasonable, in my view, and it accomplishes the additional objective of avoiding an interpretation that calls the statute's constitutionality into doubt.See generally Bunch v. State, 344 Ark. 730, 736, 43 S.W.3d 132 (2001) (observing that "if it is possible to construe a statute as constitutional, we must do so.")
[3] This office has previously observed that "to the extent A.C.A. § 14-169-803 purports to authorize any gratuitous transfer of school property, it may be legally suspect as conflicting with [Ark. Const. art. 16, § 11 and art. 14, §§ 2 and 3]. . . ." Op. Att'y Gen. 2004-056 at n. 1 (emphasis original. See also Op. Att'y Gen. 2008-091. As indicated in response to Question 1 above, I believe that any conveyance of school district property, whether or not supported by monetary consideration, must directly advance a distinct school purpose. Accord Op. Att'y Gen. 2008-213. *Page 1