Ron SHAMLIN, Sr., et al. *v.*
QUADRANGLE ENTERPRISES, INC.

CA 07–308 272 S.W.3d 128

Court of Appeals of Arkansas
Opinion delivered January 23, 2008

*Terrence Cain,* for appellants.

*Jensen Young & Houston, PLLC,* by: *Perry Y. Young,* for appellee/cross-appellant.

L ARRY D. VAUGHT, Judge. This appeal involves the wrongful cutting of timber from land owned by appellee Quadrangle Enterprises, Inc. (Quadrangle). Quadrangle sued appellants Ron Shamlin, Sr., Ron Shamlin, Jr., and Arkansas Timber & Logging (ATL), the company owned by Shamlin Sr., as well as Kenneth Harper and his company, Real Estate Development, Inc. (REDI), under Ark. Code Ann. § 18-60-102 (Repl. 2003). The jury awarded

Quadrangle $11,500 for the value of its timber, trebled under the statute to $34,500. The Shamlins and Harper were made jointly and severally liable for this award. The jury also awarded Quadrangle its costs of remediation of $12,000, apportioning 85% to Harper and 15% to Shamlin Jr. Finally, the jury awarded $1,000 for additional timber taken by Harper and trebled it to $3,000, as well as punitive damages of $25,000. The Shamlins raise four points on appeal. Quadrangle cross-appeals from the circuit court's order extending the time for the Shamlins to file the record, contending that the Shamlins had not ordered the record from the court reporter when they filed their notice of appeal. We affirm on both direct appeal and cross-appeal.

Quadrangle owns over 1,000 acres in Saline County. Its lands surround a tract of approximately forty-seven acres that belongs to Harper. On May 6, 2003, Harper and ATL entered into a written agreement whereby ATL was to cut and sell the timber on part of Harper's tract. ATL was a sole proprietorship owned by Shamlin Sr., but Shamlin Jr. managed its day-to-day operations. As such, he executed the contract with Harper on behalf of ATL. The contract included a legal description of the acreage from which ATL was to cut and remove timber. The contract also contained language certifying that Harper had title to the property and was solely responsible for marking the boundaries of the property.

An ATL crew began cutting and removing the timber off Harper's property. Shortly after completing the work, Harper called Shamlin Jr. to ask ATL to come back and remove the timber from other property he had recently purchased. The ATL crew returned to what Harper represented was his property and spent two weeks logging approximately seventeen to twenty acres. During the latter stages of this second job, Harper went to the job site and realized that ATL was logging Quadrangle's property. Although he thought ATL was logging the wrong property, Harper did not stop the ATL crew nor did he notify Quadrangle.[1]

On March 8, 2004, Quadrangle filed suit against Harper, REDI, Shamlin Jr., and ATL, alleging causes of action for trespass to land and conversion of timber under section 18-60-102. The complaint sought damages jointly and severally against the defen-

---

[1] As a result of this incident, criminal charges were filed against Shamlin Jr. He ultimately pled guilty to the charges and was sentenced to 120 months' probation and ordered to pay restitution of $21,485.

dants, treble damages, and punitive damages.[2] The Shamlins denied the material allegations of the complaint.

On December 19, 2005, Quadrangle filed a motion for partial summary judgment as to liability against the Shamlins and ATL, arguing that Shamlin Jr. was liable for his own actions in the trespass upon Quadrangle's land and that Shamlin Sr. was liable under the doctrines of negligent supervision and *respondeat superior*. The Shamlins argued that summary judgment was improper because the Civil Justice Reform Act of 2003 (CJRA), codified at Ark. Code Ann. §§ 16-55-201 to 16-55-220 (Repl. 2005), abolished joint and several liability except upon a finding that Shamlin Jr. and Harper acted in concert, which they asserted was a fact question for a jury.

At the hearing on the motion for summary judgment, the Shamlins again raised the issue of whether the CJRA abolished joint and several liability. By order entered on February 21, 2006, the circuit court granted Quadrangle's motion for partial summary judgment on liability as to Shamlin Jr. However, the court denied the motion as to Shamlin Sr. "on the present state of the pleadings, subject to review in the event [Quadrangle] amends its pleading." The circuit court noted that the pleadings did not sufficiently allege that Shamlin Jr.'s actions were taken during the course and scope of his employment with ATL and Shamlin Sr.

Quadrangle filed its third amendment to the complaint on January 30, 2006, in which it alleged that ATL was a sole proprietorship of Shamlin Sr. and that all actions taken by the Shamlins and ATL, particularly Shamlin Jr., were taken within the course and scope of employment in the service of Shamlin Sr. The Shamlins admitted that ATL was a sole proprietorship but denied the remaining allegations of the amendment to the complaint.

By order entered on June 29, 2006, the circuit court reconsidered and granted Quadrangle's motion for summary judgment as to the liability of Shamlin Sr. The court found that Shamlin Sr. would be liable to the same extent as Shamlin Jr. on the basis of *respondeat superior*. The court also found that the CJRA did not affect Quadrangle's trespass and conversion claims nor its claims for treble or punitive damages. The court did find that the

---

[2] The complaint was later amended to add Shamlin Sr. as a defendant and, again, to add a cause of action for negligent supervision against Shamlin Sr.

CJRA would require apportionment as to Quadrangle's remediation costs for the damage to its land.

A jury trial was held August 8 through 10, 2006, as to Quadrangle's damages, as well as the apportionment of damages on Quadrangle's remediation costs. The case was submitted to the jury on a "Specific Verdict Form," consisting of a series of interrogatories. The jury answered the interrogatories as follows:

1. Did the Plaintiff Quadrangle Enterprises, Inc. demonstrate by a preponderance of the evidence that Kenneth Harper, individually and as agent of Real Estate Development, Inc. was responsible in whole or in part for damages caused by the trespass onto Plaintiff's lands, including the cutting and conversion of the Plaintiff's timber?

Yes.
(if no, you may skip questions 5, 6, 8 and 10, and your answer to question 9 as concerns Kenneth Harper should be $0)

2. Did the Plaintiff Quadrangle Enterprises, Inc. demonstrate by a preponderance of the evidence that Arkansas Timber & Logging had sufficient notice in advance of the activity on Plaintiff's lands that Ron Shamlin, Jr. posed an elevated risk of committing the type of activities of which Plaintiff complains, and that it ignored that risk?

Yes.

3. How much was the Plaintiff Quadrangle Enterprises, Inc. proximately damaged on account of the value of the harvested and converted timber east of the Real Estate Development, Inc. property?

$11,500

4. How much was the Plaintiff Quadrangle Enterprises, Inc. proximately damaged on account of the costs of remediation of that property from which timber had been harvested (east of the Real Estate Development, Inc. property), and/or by the lessening of the value of that property as a result?

$12,000

5. How much was the Plaintiff Quadrangle Enterprises, Inc. proximately damaged on account of the value of the harvested and

converted timber as it stood "on the stump" south of the Real Estate Development, Inc. property?

$1,000

6. Did Kenneth Harper demonstrate by a preponderance of the evidence that he reasonably had probable cause to believe that the Plaintiff's lands were his own or that of Real Estate Development, Inc.?

No

7. Did Ron Shamlin, Jr. demonstrate by a preponderance of the evidence that he reasonably had probable cause to believe that the Plaintiff's lands were those of his own or of Arkansas Timber & Logging?

No

8. Do you find that the Plaintiff has demonstrated by a preponderance of the evidence that Kenneth Harper and Ron Shamlin, Jr. acted in concert in trespassing onto Plaintiff's lands and converting Plaintiff's timber, i.e., that they each entered into a conscious agreement to pursue a common plan or design to trespass and remove timber, and each actively took part in that common plan or design?

No
(if yes, skip question 9 and go directly to question 10)

9. If your answer to question no. 8 was in the negative, please state the respective fault of each party (total = 100%):

85% — Kenneth Harper and 15% — Ron Shamlin, Jr.

10. Did the Plaintiff demonstrate by clear and convincing evidence that Kenneth Harper knew or ought to have known that his conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences; or that he intentionally pursued a course of conduct for the purpose of causing injury or damage?

Yes

11. Did the Plaintiff demonstrate by clear and convincing evidence that Ron Shamlin, Jr. knew or ought to have known that his conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences; or that he intentionally pursued a course of conduct for the purpose of causing injury or damage?

No

12. If your responses to questions 10 or 11, or both, were "yes," how much in total punitive damages do you award the Plaintiff?

$25,000

13. Did any damages suffered by the Plaintiff Quadrangle proximately result from a breach of contract between Ron Shamlin, Sr. d/b/a Arkansas Timber & Logging and Real Estate Development, Inc.?

No
(If your answer is "no," you may skip question 14)

14. If your prior answer was "yes," how much of the damages suffered by Plaintiff Quadrangle that you have awarded against Ron Shamlin, Sr. d/b/a Arkansas Timber & Logging was proximately caused by a material breach of the agreement between Real Estate Development, Inc. and Arkansas Timber & Logging?

$

Based on the jury's answers to these interrogatories, the circuit court entered judgment finding that the Shamlins, Harper, and REDI were jointly and severally liable for the conversion of Quadrangle's timber; that the timber was worth $11,500 and trebling the award pursuant to Ark. Code Ann. § 18-60-102; that the Shamlins, Harper, and REDI were jointly and severally liable for litigation costs of $1,005; and that the Shamlins were jointly and severally liable for $1,800, or 15% of Quadrangle's remediation costs. Quadrangle was also awarded judgment against Harper and REDI in the sum of $38,200, reflecting $10,200 as Harper's 85% share of the remediation costs; $1,000, trebled to $3,000, for additional timber conversion; and $25,000 in punitive damages. The Shamlins filed a timely notice of appeal.

On December 11, 2006, the Shamlins, represented by different counsel, filed a motion for extension of time to file the record. On December 21, 2006, Quadrangle objected to the extension and asserted that the Shamlins had violated Rules 5 and 6(b) of the Arkansas Rules of Appellate Procedure–Civil in that they had not ordered the transcript from the court reporter prior to filing their notice of appeal. On December 22, 2006, the circuit court held a hearing where the court reporter testified that she learned of the notice of appeal's being filed within one or two days of its filing, that she called the Shamlins' attorney and left a message, and that she never heard from the attorney again. She also testified that the Shamlins' present counsel contacted her to inquire about whether satisfactory financial arrangements had been made and that she was satisfied with those arrangements. The circuit court granted the extension of time. Quadrangle cross-appeals from that order.

We first address Quadrangle's cross-appeal because it relates to the jurisdiction of this court to hear this appeal. *See Conlee v. Conlee*, 366 Ark. 342, 235 S.W.3d 515 (2006) (holding that the timely filing of the record on appeal is a jurisdictional requirement to perfecting an appeal). On cross-appeal, Quadrangle argues that the circuit court erred in extending the time for the Shamlins to file the record with the clerk of this court because, at the time the Shamlins filed their notice of appeal, they had not made financial arrangements for the transcript with the court reporter. The argument is that, if the circuit court erred in granting the extension, the Shamlins did not timely file the record, thereby depriving this court of jurisdiction. The requirement for ordering the transcript is found in Ark. R. App. P.–Civil 3(e) and 6(b). The standard of review regarding a circuit court's decision to grant an extension to file an appeal is abuse of discretion, and we will not reverse absent an abuse of that discretion. *DeViney v. State*, 299 Ark. 471, 772 S.W.2d 607 (1989); *Henderson Methodist Church v. Sewer Improvement Dist.*, 294 Ark. 188, 741 S.W.2d 272 (1987).

Rule 3(e) of the Rules of Appellate Procedure states that a notice of appeal "shall designate the judgment, decree, order or part thereof appealed from and shall designate the contents of the record on appeal. The notice shall also contain a statement that the transcript, or specific portions thereof, have been ordered by the appellant." The procedural steps outlined in Rule 3(e) require only substantial compliance, provided that the appellee has not been prejudiced by the failure to comply strictly with the rule.

*Rogers v. Tudor Ins. Co.,* 325 Ark. 226, 925 S.W.2d 395 (1996). Both the supreme court and this court have held that there is no substantial compliance when the transcript is not actually ordered or when the notice of appeal declares that the transcript has been ordered when, in fact, it has not been. *See DeViney,* 299 Ark. at 473, 772 S.W.2d at 608; *McElroy v. American Med. Int'l, Inc.,* 297 Ark. 527, 763 S.W.2d 89 (1989); *Hudson v. Hudson,* 277 Ark. 183, 641 S.W.2d 1 (1982); *Daffin v. Seymore,* 14 Ark. App. 163, 685 S.W.2d 539 (1985).

On the other hand, in *Johnson v. Carpenter,* 290 Ark. 255, 718 S.W.2d 434 (1986), the appellant's notice of appeal contained a statement that the transcript had been ordered. There was an apparent misunderstanding between the appellant's attorney and the court reporter about whether the transcript had been requested — the attorney had told his client to order the transcript from the court reporter so that the attorney would not become financially responsible for the transcript's cost. Because the attorney had not totally ignored Rule 3(e), the supreme court held that there was substantial compliance with the rule. The holding in *Carpenter* further turned on the absence of any prejudice to the appellee even though there was a minor delay in ordering the transcript.

More recently, the supreme court decided *Helton v. Jacobs,* 346 Ark. 344, 57 S.W.3d 180 (2001). There, the notice of appeal stated that no financial arrangements had been made with the court reporter but that the appellants were willing to pay up to 50% of the transcript cost in accordance with Ark. Code Ann. § 16-13-510(c) (Repl. 1999). The appellee moved to dismiss the appeal. The supreme court denied the motion and held that there was substantial compliance with Rule 3(e) because the appellants had, in fact, ordered the transcript and tendered a $100 deposit to the court reporter.

We find that elements of both lines of cases are present here. First, the Shamlins' former attorney did nothing beyond filing the notice of appeal without having ordered the transcript. The court reporter testified that she learned of the notice of appeal's being filed either the day it was filed or the next day but that she never heard from the attorney about ordering the transcript. On the other hand, the Shamlins' present counsel has done all that he could to perfect the appeal: he communicated with the court reporter to make sure financial arrangements were in place and filed an appropriate motion for an extension of time to file the record. The court reporter testified that she was satisfied that

arrangements were in place before Quadrangle objected to the extension. Finally, Quadrangle does not explain how it is prejudiced by the failure to timely order the transcript. Absent some kind of convincing argument showing prejudice, we will not hold that it exists. *Johnson, supra.* Accordingly, we hold that the circuit court did not abuse its discretion and affirm the order granting the extension of time to file the record.

█ The Shamlins' first point on appeal is that the circuit court erred in granting summary judgment against Shamlin Jr. because the court found him strictly liable for trespass, a standard that has not been adopted in Arkansas. The Shamlins rely on the supreme court's decision in *Arkansas Louisiana Gas Co. v. Central Utilities Constructors, Inc.*, 278 Ark. 101, 643 S.W.2d 566 (1982), holding that Arkansas would not adopt a rule of strict liability in trespass. That case does not have any application to an action under section 18-60-102, because of the nature of the statutory action. In *Laser v. Jones*, 116 Ark. 206, 172 S.W. 1024 (1915), the court held that the right of action provided for in what is now section 18-60-102 is not the common-law action for trespass upon real estate, but a statutory action whereby the owner of property may recover as damages treble the value of such property against one who willfully destroys it. The fact that the statutory remedy was different from the common law action for trespass was reiterated in *Peek v. Henderson*, 208 Ark. 238, 185 S.W.2d 704 (1945), and *Bailey v. Hammonds*, 193 Ark. 633, 101 S.W.2d 785 (1937). Thus, there was no error in granting summary judgment against Shamlin Jr.

In their second point, the Shamlins argue that summary judgment in favor of Quadrangle was improperly granted on the basis that there was a material issue of fact of whether Shamlin Jr. was an employee or an independent contractor. According to the Shamlins, this determination is important because, ordinarily, one employing an independent contractor is not liable for the contractor's negligence committed in the performance of the contracted work. *See Stoltze v. Arkansas Valley Elec. Coop. Corp.*, 354 Ark. 601, 127 S.W.3d 466 (2003); *Blankenship v. Overholt*, 301 Ark. 476, 786 S.W.2d 814 (1990); *Draper v. ConAgra Foods, Inc.*, 92 Ark. App. 220, 212 S.W.3d 61 (2005). In other words, if Shamlin Jr. were found to be an independent contractor, Shamlin Sr. would not be liable to Quadrangle. However, whether Shamlin Jr. was an independent contractor or an employee of ATL is irrelevant under section 18-60-102. In *Lewis v. Mays*, 208 Ark. 382, 186 S.W.2d

178 (1945), a person who engaged a timber cutter was held liable under what is now section 18-60-102 for the acts of the timber cutter, without regard to the status of the cutter as an employee or independent contractor. The supreme court reasoned that the party engaging the timber cutter became a joint tortfeasor with the timber cutter because the actions of the timber cutter were taken "by the advice or direction" of the employer. 208 Ark. at 385, 186 S.W.2d at 180 (quoting 27 Am. Jur. *Independent Contractors* § 40). The holdings in *Hinton v. Bryant*, 236 Ark. 577, 367 S.W.2d 442 (1963), and *Lewis v. Phillips*, 223 Ark. 380, 266 S.W.2d 68 (1954), are to the same effect.

▮ ATL was a sole proprietorship belonging to Shamlin Sr. It had no separate identity apart from Shamlin Sr. *See* 1 Z. Cavitch, *Business Organizations* § 1.04[1], at 1-23 (Matthew Bender 2000). Therefore, when Shamlin Jr., operating on behalf of ATL, trespassed on Quadrangle's lands, they were acting as one person, Shamlin Sr., and became liable as joint tortfeasors.

The Shamlins' third and fourth points both discuss whether the CJRA abolished joint and several liability in the circumstances of this case, as well as whether Quadrangle could recover both treble damages and punitive damages. We will separate the issues and discuss the CJRA under the third point and the damages issue under the fourth point.

The CJRA, in section 16-55-201(a), provides as follows: "In any action for personal injury, medical injury, *property damage,* or wrongful death, the liability of each defendant for compensatory or punitive damages shall be several only and shall not be joint." (Emphasis added.) The circuit court ruled that the CJRA did not affect the Shamlins' liability for conversion of the timber under section 18-60-102. The Shamlins argue that the CJRA applies and, therefore, they cannot be held jointly and severally liable because of the jury's finding that they and Harper did not act in concert. We disagree because the Shamlins' argument is overly broad. As relevant to this case, the CJRA applies only to causes of action involving "property damage." In determining whether the CJRA applied in the present case, the circuit court had three choices in construing the statute: (1) it could look to the nature of the cause of action — conversion of the value of the timber — and determine that the CJRA did not apply because it is not among the causes of action specifically listed as being affected by the CJRA; (2) it could look at the actual nature of the damages claimed and determine that some of the damages should be apportioned, such as

those for the cost of repairing the land, while also determining that other damages, such as the value of the timber converted, should not be apportioned; or (3) it could determine that the CJRA overrode the common law and applied to any cause of action involving any degree of property damage.

We review issues of statutory interpretation de novo, as it is for the appellate courts to decide what a statute means. *Baker Refrigeration Sys., Inc. v. Weiss*, 360 Ark. 388, 201 S.W.3d 892 (2005). Thus, although we are not bound by the circuit court's interpretation, in the absence of a showing that the circuit court erred, its interpretation will be accepted as correct on appeal. *Id.* We believe that the circuit court correctly applied the CJRA by apportioning the damages because its interpretation comported with our rules of statutory construction. It is a well settled rule of statutory construction in Arkansas jurisprudence that a statute will not be interpreted as changing the common law absent an irreconcilable conflict or clear expression of the intent to do so. *Thompson v. Bank of America*, 356 Ark. 576, 157 S.W.3d 174 (2004); *State v. One Ford Automobile*, 151 Ark. 29, 235 S.W.378 (1921).

■ Conversion is a common-law tort action for the wrongful possession or disposition of another's property. *See France v. Nelson*, 292 Ark. 219, 729 S.W.2d 161 (1987). However, such an action does not necessarily involve damage to property, which would bring it within the reach of the statute. Therefore, the CJRA does not automatically apply to actions under section 18-60-102. The CJRA clearly evinces an intent to alter the common law regarding joint and several liability for the causes of action listed, such as personal injury or property damage. It does not, however, display such an intent regarding causes of action involving the conversion of property. Therefore, we cannot say that the circuit court erred in finding the Shamlins jointly and severally liable with Harper and with each other for the value of Quadrangle's timber.

■ In their fourth point, the Shamlins argue that the judgment entered in this case was improper because it awarded Quadrangle both punitive damages and statutory treble damages. However, the jury did not award punitive damages against the Shamlins; instead, the jury's award of punitive damages was directed against Harper and his company. Because both punitive damages and treble damages were not awarded against the Sham-

lins, they do not have standing to raise the issue on appeal. *See*
*McDonald's Corp. v. Hawkins*, 315 Ark. 487, 868 S.W.2d 78 (1994).

Affirmed on direct appeal; affirmed on cross-appeal.

BIRD and GLOVER, JJ., agree.