Teresa GRAY, Keith Broach, Renita L. Thompson,
Steven B. Thompson, Eleanor Burress, and Marnita Bisbee
(Individually, and as Representatives of a Similarly Situated Class of
Patrons and Taxpayers of the Little Rock School District of Pulaski
County, Arkansas) *v.* Katherine MITCHELL, Michael Daugherty,
Charles Armstrong, Dianne Curry, Melanie Fox, Baker Kurrus, and
Larry Berkley (in Their Official Capacities as Members of the Board
of Education of the Little Rock School District); the Board of
Education of the Little Rock School District of Pulaski County,
Arkansas; and the Little Rock School District of
Pulaski County, Arkansas

07-858                                                      285 S.W.3d 222

Supreme Court of Arkansas
Opinion delivered May 29, 2008

*Jack Lyon & Jones, P.A.*, by: *Eugene G. Sayre*; *Gill Elrod Ragon Owen & Sherman, P.A.*, by: *John P. Gill, Roger H. Fitzgibbon, Jr.*, and *Kelly W. McNulty*; and *Trimble Law Firm*, by: *Don Trimble*, for appellants.

*Welch and Kitchens, LLC*, by: *Morgan E. Welch*, for appellees.

ROBERT L. BROWN, Justice. Appellants Teresa Gray, Keith Broach, Renita Thompson, Steven Thompson, Eleanor Burress, and Marnita Bisbee, individually and as representatives of similarly situated patrons and taxpayers of the Little Rock School District of Pulaski County, Arkansas (collectively "taxpayers"), appeal from July 30, 2007 and August 8, 2007 orders granting summary judgment to appellees Katherine Mitchell, Michael Daugherty, Charles Armstrong, Dianne Curry, Melanie Fox, Baker Kurrus, and Larry Berkley, in their official capacities as members of the Board of Education of the Little Rock School District; the Board of Education

of the Little Rock School District of Pulaski County, Arkansas; and the Little Rock School District of Pulaski County, Arkansas (collectively "Board"). The Board's motion to dismiss on grounds of mootness is denied. We affirm the summary judgment.

This case arose from a 4-3 vote by the Little Rock School Board taken at a May 24, 2007 School Board meeting to terminate then-superintendent Dr. Roy G. Brooks without cause and to pay him severance pay as provided for in his employment contract with the School Board. On June 13, 2007, the taxpayers filed suit in circuit court and contended that paying severance pay to Dr. Brooks "for not working" constituted an illegal exaction in violation of Arkansas statutory law and the Arkansas Constitution.[1] The complaint specifically alleged that a severance payment would violate article 14, § 3(b) of the Arkansas Constitution, which provides for a uniform rate of *ad valorem* property tax and which states that school funds derived from *ad valorem* property taxes shall be used "solely for maintenance and operation of schools." The taxpayers attached a copy of Dr. Brooks's employment contract with the School Board to their complaint, along with two amendments that extended the contract.

On June 25, 2007, the Board filed a motion to dismiss the taxpayers' complaint under Rules 12(b) and 8(a), of the Arkansas Rules of Civil Procedure (2007), or, alternatively, for summary judgment under Rule 56(b) of the Arkansas Rules of Civil Procedure. After responsive pleadings were filed and a hearing held, the circuit court denied the motion to dismiss but granted the motion for summary judgment.

On August 8, 2007, in response to a Rule 52(b)[2] motion by the taxpayers, the circuit court entered an additional order in which it held that the actions of the School Board were constitutional pursuant to article 14, §§ 2 and 3 of the Arkansas Constitution.

---

[1] The Arkansas Constitution provides that "[a]ny citizen of any county, city or town may institute suit, in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." Ark. Const. art. 16, § 3.

[2] Rule 52(b) of the Arkansas Rules of Civil Procedure provides that "[u]pon motion of a party made not later than 10 days after entry of judgment, the court may amend its findings of fact previously made or make additional findings and may amend the judgment accordingly."

## I. Burden of Proof for Summary Judgment

For their appeal, the taxpayers contend as their first point that the Board failed to establish a *prima facie* entitlement to summary judgment and, accordingly, did not meet its burden of proof. They further assert that the circuit court erred in finding that the taxpayers had the burden of introducing evidence to establish the existence of a material question of fact. The taxpayers note that the circuit court found in its order that the Board had attached a copy of the contract between the School Board and Dr. Brooks to its motion for summary judgment, while in fact the only contracts attached to that motion were between the School Board and previous superintendents.

The taxpayers also point out that no affidavits were attached to the motion for summary judgment. They emphasize that, in the absence of reliance by the circuit court on any proof outside of the pleadings in granting summary judgment, it was inconsistent for the circuit court to deny the Board's motion to dismiss but then grant the Board's motion for summary judgment.

The taxpayers next claim that, by focusing on the School Board's discretion and by failing to balance that discretion against the constitutional limitations on the expenditure of school district funds, the circuit court, in effect, found that the Board had the discretion to violate the Arkansas Constitution. They note that the Board is a creature of the Arkansas General Assembly and can only exercise what power it is given under the Arkansas Constitution and by statute. In sum, they urge that a material question of fact remains: whether or not the payment of severance pay to a terminated school superintendent is an operations-and-maintenance expenditure and, therefore, allowable under the Arkansas Constitution.

The Board counters that whether severance pay is necessary for the operation and maintenance of public schools and is therefore constitutional is not a question of fact that can be established by testimony but rather is a question of law. The circuit court, it argues, made a specific finding that there were no disputed material facts and listed several material facts in its order that were undisputed. Where the facts are not disputed, the Board concludes, it is appropriate to make a legal determination by means of summary judgment.

Our standard of review for summary judgment has been often stated:

> Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. Once a moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable minds might reach different conclusions from those undisputed facts. On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material question of fact unanswered. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties.

*Sykes v. Williams*, 373 Ark. 236, 239-40, 283 S.W.3d 209, 213 (2008).

We disagree with the taxpayers that the Board failed to meet its burden of showing there was no genuine issue of material fact and, thus, the issue could not be decided as one of law. In its order of July 30, 2007, which granted summary judgment to the Board, the circuit court first quoted the Termination Clause from the School Board's three-year contract with Dr. Roy Brooks set out under Paragraph 11:

> E. Unilateral Termination by Board of Education. The BOARD may, at its option, and by a minimum of ninety (90) days notice to SUPERINTENDENT, unilaterally terminate this contract. In the event of such termination, the DISTRICT shall pay to SUPERINTENDENT, as severance pay, all of the aggregate salary allowances and other compensation he would have earned under this employment contract from the actual date of termination to the termination date set forth in this employment contract, unless otherwise agreed to.

Though the circuit court misspoke when it said in its order that the employment contract was attached to the Board's summary-judgment motion, the contract was properly before the court as an exhibit to the taxpayers' complaint.

The circuit court then concluded in its summary-judgment order:

14. The defendants attached a copy of the contract between the Board and Dr. Brooks to the *Motion for Summary Judgment*. The signatures of the members of the Board on the contract are evidence of the Board's utilization of its discretion to include the unilateral termination provision in the contract.

15. The plaintiffs' *Response to Motion to Dismiss or for Summary Judgment* had two attachments, an Affidavit of Teresa Gray and Minutes of the May 24, 2007, Special Meeting of the Board of Directors.

16. The Minutes of the May 24, 2007, Special Meeting provide evidence of the Board's utilization of its discretion to invoke the unilateral termination provision of the contract.

17. After the defendants established a *prima facie* entitlement to summary judgment, the plaintiffs were required to meet proof with proof and demonstrate the existence of one or more disputed material issues of fact. The plaintiffs failed to provide any evidence to meet their burden of proving by clear and convincing evidence that the Board clearly abused its discretion in either including the unilateral termination provision in the contract or in choosing to exercise the unilateral termination provision.

With the employment contract and the May 27, 2007 minutes of the School Board before it, which included the motion and vote to terminate Dr. Brooks under Paragraph 11E of the employment contract, the circuit court had the pertinent, undisputed facts necessary to decide the maintenance-and-operation issue under the Arkansas Constitution. Moreover, the taxpayers provided nothing in the way of proof to show that there was any genuine issue of material fact that had to be resolved in order to decide the constitutional issue, which was their obligation under Arkansas Rule of Civil Proceedure 56(c)(2). We hold that, absent a showing of a genuine issue of material fact, the question of whether payment of severance pay as part of the termination of Dr. Brooks pursuant to the employment contract falls under the constitutional rubric of maintenance and operation of the public schools can be decided as a matter of law. We discern no valid reason to remand this matter to the circuit court to determine factual issues.

There is no reversible error on this point.

## II. Constitutionality of Severance Pay

Turning next to the issue of the constitutionality of Dr. Brooks's severance pay, the taxpayers claim that the payment of $656,000[3] to Dr. Brooks for what they term to be "not working" is unconstitutional under three provisions of the Arkansas Constitution. First, they argue that, under article 14, § 3, public school funds derived from *ad valorem* property taxes can be used only for the maintenance and operation of schools. In order to qualify, they contend, the payment of funds must be directly and immediately connected with the public school system. Paying an employee not to work, they continue, does not primarily inure to the benefit of school purposes; nor does it have a sufficient educational nexus. The taxpayers also point to the preliminary-hearing testimony of an accountant, James Williams, III, who opined that severance pay would not be classified as an operational cost under governmental accounting practices.

The taxpayers argue, in addition, that the payment of severance pay violates article 14, § 2 of the Arkansas Constitution, which provides that no money or property belonging to school districts can be used "for any other reason than for the respective purposes to which it belongs." The taxpayers concede that neither party raised this issue in the proceedings before the circuit court but observe that the circuit court specifically held in its summary-judgment order that the Board's actions did not violate this provision. They contend that, in order to pass muster under article 14, § 2, an expenditure must benefit the school district and must be absolutely necessary for the operation and maintenance of the school district. The payment to Dr. Brooks fails this test, they maintain. The taxpayers again claim that the Board has no discretion to violate the constitution.

The taxpayers urge, as a final point, that the payment of public-school funds as severance pay is prohibited by the due process clause, which is found at article 2, § 8 of the Arkansas Constitution, because it results in an expenditure of public school funds that inures primarily to private, rather than public, benefit. Although the taxpayers concede that this argument was not raised

---

[3] Although the appellants' brief to this court cites the amount paid as a result of Dr. Brooks's termination as being $656,000, other documents, including an affidavit of Mark Millhollen, Chief Financial Officer of the Little Rock School District, suggest that the amount actually paid was $635,000.

before the circuit court, they claim that, because this is a taxpayer's suit, they represent the citizens as a whole and could not waive an argument that should have been asserted.

The Board points out, in response, that the final payment to Brooks was not only severance pay but also pay for retirement, attorneys' fees, taxes, and the settlement of a lawsuit. It notes that this court has previously recognized that the school board of each school district is vested with broad discretion over such matters and that only if a clear abuse of discretion is shown by clear and convincing evidence will a court interfere with the exercise of that discretion. The Board points out that the taxpayers failed to challenge the terms of the contract with Dr. Brooks when it was entered into. Nor, the Board argues, do the taxpayers contend that the School Board lacked the power to terminate Dr. Brooks. Instead, the Board maintains that the taxpayers are urging the Board to breach its contract, which could result in legal expenses for the School District.

Summarizing the standard of review for constitutional interpretation, this court has said:

> When interpreting the constitution on appeal, our task is to read the laws as they are written, and interpret them in accordance with established principles of constitutional construction. It is this court's responsibility to decide what a constitutional provision means, and we will review a lower court's construction *de novo*. We are not bound by the decision of the trial court; however, in the absence of a showing that the trial court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning. Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision.... Just as we will not interpret statutory provisions so as to reach an absurd result, neither will we interpret a constitutional provision in such a manner.

*State v. Oldner*, 361 Ark. 316, 326, 329, 206 S.W.3d 818, 821-22, 824 (2005) (internal citations and quotation omitted).

The Arkansas Constitution contains two provisions specifically limiting the use to which public school funds can be put. article 14, § 2 provides that "[n]o money or property belonging to the public school fund, or to this State, for the benefit of schools or

universities, shall ever be used for any other than for the respective purposes to which it belongs."[4] Furthermore, since its amendment in 1996, Article 14, § 3, provides that all of the money distributed to school districts as a result of the uniform *ad valorem* property tax of twenty-five mills is to be used "solely for maintenance and operation of the schools." Ark. Const. art. 14, § 3 (as amended by Ark. Const. amend. 74). The only definition of "maintenance and operation" expenses contained in section 3 is that they include "such expenses for the general maintenance and operation of schools as may be defined by law." The taxpayers have made no argument on appeal that the Board has violated any statutory provision regarding school expenditures.

This court has previously interpreted article 14, § 2, and said that "[t]he Constitution . . . prohibit[s] the Legislature from applying the common school fund to any other branch of state expenditures except that immediately and directly connected with the establishment and maintenance of a common school system." *Little River County Bd. of Educ. v. Ashdown Special Sch. Dist.*, 156 Ark. 549, 556, 247 S.W.70, 72 (1923). Thus, a school board, like the legislature, is limited to spending school money for expenses immediately and directly connected with the establishment and maintenance of schools.

This court has also said that "the proper authorities (such as the trustees of a school district) may, in their discretion, make any expenditure of the [public school] funds which is absolutely necessary for the proper maintenance of the school intrusted to their charge." *Bd. of Educ. of Lonoke County v. Lonoke County*, 181 Ark. 1046, 1054, 29 S.W.2d 268, 272 (1930). It is clear, nonetheless, that, by using the term "absolutely necessary," this court did not intend to limit school boards to those expenditures without which there could be no public schools.

In *Lonoke County*, for example, this court noted:

> They [the proper authorities] might properly expend a portion of the money in repairing or improving the school building, or in fitting it with proper appliances and conveniences. They might insure the school property against loss by fire, and pay the premium

---

[4] The taxpayers' complaint fails to contain any allegation that the Board's actions violated article 14, § 2. However, since the circuit court specifically found that there was no such violation, the matter will be addressed in this opinion.

from the school fund. By a parity of reasoning we have no hesitation in holding that funds derived from local taxation within a school district may properly be expended by the trustees of the district in protecting or preserving the right of local taxation for educational purposes by the employment of an attorney, or in other legitimate expenses necessary for presenting their rights in the adjudication of the case.

*Id.* at 1054-55, 29 S.W.2d at 272. Given the list of expenditures that the court noted would be permissible, there can be no doubt that the court intended "absolutely necessary" to mean that which is convenient, useful, appropriate, suitable, proper or conducive to the proper maintenance of the schools. Moreover, this court has said that "any use of school funds raised from taxation that results in benefits to school funds or property or aids in the stated purposes for which these funds may be expended would not be an unconstitutional diversion." *Rainwater v. Haynes*, 244 Ark. 1191, 1195, 428 S.W.2d 254, 257 (1968).

■ We conclude from this court's precedent that exactly which expenditures should be made to benefit a school district is a matter for the School Board to determine. This court's role is merely to ensure that school money is not diverted to an unrelated purpose, such as to subsidize road improvements or to pay a county officer for duties unrelated to the operation of the schools. *Special Sch. Dist. of Fort Smith No. 100 v. Sebastian County*, 277 Ark. 326, 330, 641 S.W.2d 702, 705 (1982).

Although this court has not previously interpreted the current version of art. 14, § 3, we hold that it requires nothing more than article 14, § 2. Under section 2, an expenditure must be "immediately and directly connected with the establishment and maintenance of a common school system." *Little River County Bd. of Educ.*, 156 Ark. at 556, 247 S.W. at 72. Clearly, any expenditure that meets this requirement will be one that is "for maintenance and operation of the schools." Ark. Const. art. 14, § 3 (as amended by Ark. Const. amend. 74); *see Rainwater*, 244 Ark. at 1195, 428 S.W.2d at 257 (analyzing together the prohibition under article 14, § 2 against "the use of money or property belonging to the state school fund for any other than the purpose to which it belongs" and the prohibition under a previous version of article 14, § 3, against "the annual tax voted by the electors of the district from being used for any purpose other than the

maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness").

Without question, the payment of a salary and benefits to a superintendent is both "immediately and directly connected with the establishment and maintenance of a common school system" and "absolutely necessary" for the maintenance and operation of schools.[5] Nevertheless, the taxpayers argue in their brief that "paying $656,000 to Dr. Brooks for not working benefits only Dr. Brooks — not the school." To the extent that the payment to Dr. Brooks represented severance pay, this argument overlooks the fact that the payment allowed the School Board to remove Dr. Brooks from his position and replace him with a person who, in the School Board's opinion, would be a better superintendent. The School Board, while operating and maintaining the School District's schools, determined that the School District could be operated and maintained in a better manner by a different superintendent. We have no doubt that this is a determination that falls within the "broad discretion . . . vested in the board of directors of each school district in the matter of directing the operation of the schools." *Safferstone v. Tucker*, 235 Ark. 70, 72, 357 S.W.2d 3, 4 (1962); *see also Whellis v. Franks*, 189 Ark. 373, 72 S.W.2d 231 (1934).

The taxpayers also contend that the payment to Dr. Brooks violated the due process clause of article 2, § 8, of the Arkansas Constitution. Although this argument was not raised below or ruled on by the circuit court, the taxpayers argue that this court should nonetheless consider it. This court has previously addressed a like argument raised in an illegal-exaction case, saying, "[w]e have no hesitancy in considering the due process clause as well [as the arguments made by the parties] for in a taxpayer's suit the plaintiff represents the citizens as a whole and cannot be permitted to waive contentions that should be asserted." *Chandler v. Bd. of Trs. of Teacher Ret. Sys.*, 236 Ark. 256, 258, 365 S.W.2d 447, 448 (1963) (citation omitted).

---

[5] Based on citations to Attorney General Opinions, the taxpayers urge this court to employ a "sufficient educational nexus" test or a "primary benefit" test. Attorney General Opinions are not, of course, binding on this court. *Ark. Prof. Bail Bondsman Licensing Bd. v. Oudin*, 348 Ark. 48, 59, 69 S.W.3d 855, 863 (2002).

However, even if this court may consider the argument, it has no merit. This court has stated that "[n]o principle of constitutional law is more fundamental or more firmly established than the rule that the State cannot, within the limits of due process, appropriate public funds to a private purpose. . . . The objects for which money is raised by taxation must be public, and such as subserve the common interest and well being of the community required to contribute." *Id.* at 258, 365 S.W.2d at 448-49 (citation and quotation omitted). The taxpayers' attempts to characterize the payment to Dr. Brooks as private and one solely for his benefit must fail. As already stated, the severance payment was made for the public purpose of removing Dr. Brooks to allow for the hiring of a new, and, in the School Board's judgment, a preferable superintendent to lead the Little Rock Public Schools.

### III. Motion to Dismiss — Mootness

Having determined that the circuit court's decision should be affirmed, we turn to the Board's motion to dismiss for mootness premised on the fact that the total severance payment has already been made to Dr. Brooks.

On August 24, 2007, the Board moved to dismiss this appeal, arguing that it had been rendered moot by the fact that all payments to Dr. Brooks and other parties that were being made as a result of Dr. Brooks's termination would be completed by the close of business on August 24.[6] This court passed on deciding this motion at that time, preferring instead to take it up when the case was submitted for our review.

The Board emphasizes that Dr. Brooks has not been joined as a party to this action, nor have the members of the School Board been sued in their individual capacities. The Board maintains, as a result, that no relief is available to the taxpayers, because any order to refund money would require the School District to pay itself back from tax money. Moreover, the Board argues that Dr. Brooks and the other payees were indispensable parties who should have been joined to the action pursuant to Rule 19 of the Arkansas Rules of Civil Procedure.

---

[6] Also on August 24, 2007, the plaintiff's filed a petition for extraordinary injunctive relief with this court, seeking to prevent any payments from being made on account of Dr. Brooks's termination. This court granted a temporary stay on the same day, but lifted it on August 28, 2007.

The Board relies, in general, on the principle that this court will not review moot cases and argues that no exception exists for the case at hand, which involves a unique settlement that encompasses not only severance pay, but also the settlement of litigation in federal court, the payment of attorneys' fees, and the cooperation of Dr. Brooks in future matters with respect to litigation involving the School District. Therefore, the Board claims that this case is not one which is likely to arise again.

Our law regarding mootness is well established in this state:

> As a general rule, appellate courts of this state will not review issues that are moot. To do so would be to render advisory opinions, which we will not do. Generally, a case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. We have recognized two exceptions to the mootness doctrine. The first one involves issues that are capable of repetition, but that evade review, and the second one concerns issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation.

*Potter v. City of Tontitown*, 371 Ark. 200, 205, 264 S.W.3d 473, 478 (2007) (citations omitted). "Where considerations of public interest or prevention of future litigation are present," this court may, at its discretion, "elect to settle an issue, even though moot." *Owens v. Taylor*, 299 Ark. 373, 374, 772 S.W.2d 596, 597 (1989).

We are mindful that the Board urges that what was paid to Dr. Brooks was more than mere severance pay and included, among other things, substantial attorney's fees. Nevertheless, the issue, as we see it, is whether the severance-pay provision under Paragraph 11E of the employment contract is constitutional. For reasons stated in this opinion, we conclude that it is. While the specific payment plan involving Dr. Brooks may not be "capable of repetition," we hold that the issue of whether severance pay in superintendent employment contracts is constitutional is one of "substantial public interest." We further recognize that our decision on this issue will prevent future litigation in school districts throughout this state. Hence, one of the exceptions to the mootness doctrine is met. For that reason, we addressed the issue in this case.

Affirmed. The motion to dismiss is denied.