2009 Ark. App. 828

**Rhonda RUSSELL, Individually and as Personal Representative of the Estate of Larry Wayne Russell, Sr., Deceased, Appellant**

v.

**NORTHEAST TEXAS LAND AND TIMBER and Perry Steitler, Appellees.**

No. CA 08–760.

Court of Appeals of Arkansas.

Dec. 9, 2009.

Provost*Umphrey Law Firm, LLP, North Little Rock, by: Thomas H. McGowan; Brian G. Brooks, Attorney at Law, PLLC, Greenbriar, by: Brian G. Brooks, for appellant.

Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Little Rock, by: Stuart P. Miller and Todd L. Newton, for appellees.

M. MICHAEL KINARD, Judge.

Appellant, Rhonda Russell, acting individually and as the representative of the estate of Larry Wayne Russell Sr., appeals from the order of the circuit court granting summary judgment in favor of appellees, Northeast Texas Land and Timber (NTLT) and Perry Steitler. We affirm the order of the circuit court.

Larry Wayne Russell Sr. was killed on August 18, 2006, while working at the Domtar Paper Mill in Ashdown. Mr. Russell was killed when he was caught between a front-end loader and a logging truck owned and operated by B.J. Jetton. Jetton testified in his deposition that the accident occurred when the brakes on his truck failed, causing it to move and trap Mr. Russell between the truck and the front-end loader. Jetton further testified that he had not had brakes fail on the truck in "a good while" and that he had not had any work done on the truck for a "year or better" prior to the accident.

Jetton hauled the wood to the Domtar mill at the request of Clemente "Speedy" Martinez. Martinez contacted Jetton and gave him the number to give to the mill when he delivered the wood. Martinez received the number via an agreement he had with NTLT, which is owned by Perry Steitler. NTLT is a timber broker that enters into agreements with others to sell timber to mills using NTLT's contract number, which gives the user of the number access to unload timber at the mill. The agreement between Martinez and NTLT was memorialized in a document titled "Gatewood Purchase Agreement." Under the agreement, Martinez agreed to sell and deliver materials under NTLT's contract information. The agreement, which specified that Martinez was acting as an independent vendor, also required Martinez to purchase and maintain general-liability insurance. Perry Steitler testified at his deposition that he had previously revoked Martinez's authority to deliver timber under the contract due to lapses in Martinez's insurance and Martinez's association with an individual of whom Steitler disapproved.

Following the accident that resulted in the death of Mr. Russell, appellant filed a wrongful-death action against NTLT and Jetton. The complaint was later amended to include Perry Steider as a defendant.[1] The complaint alleged that appellees were

---

1. Martinez was never joined as a defendant.

liable both directly and vicariously for negligence on the theories of negligent entrustment, negligent hiring, negligent training and/or negligent supervision. On October 10, 2007, appellees filed $\lfloor_3$a motion for summary judgment.[2] Following a hearing on the motion, the trial court granted the motion and dismissed the complaint against appellees with prejudice in an order filed March 24, 2008. This timely appeal followed.

Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Sykes v. Williams,* 373 Ark. 236, 283 S.W.3d 209 (2008). Summary judgment should be denied if, under the evidence, reasonable minds might reach different conclusions from the undisputed facts. *Brock v. Townsell,* 2009 Ark. 224, 309 S.W.3d 179. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Once the moving party has established a prima facie case for summary judgment, the opposing party is required to meet proof with proof and demonstrate the existence of a disputed material fact. *Kearney v. City of Little Rock,* 2009 Ark. App. 125, 302 S.W.3d 629.

Appellant argues that the trial court erred in granting summary judgment in favor of appellees. Regarding appellant's direct-liability claim, appellant cites *Ozan Lumber Co. v. McNeely,* 214 Ark. 657, 217 S.W.2d 341 (1949), for the premise that an employer has a duty to select a skilled and competent contractor, and the employer is liable for the negligent or wrongful acts of an independent contractor where he knew his character for negligence, recklessness, or incompetency at the time he employed him. Although this statement of the $\lfloor_4$law is correct, *see Stoltze v. Arks. Valley Elec. Coop. Corp.,* 354 Ark. 601, 127 S.W.3d 466 (2003), we hold on the record before us that the trial court properly granted summary judgment on the direct-liability claim.

▪ In the instant case, appellant failed to meet proof with proof and demonstrate the existence of a material issue of fact as required by the Arkansas Supreme Court in summary-judgment cases. *Couch v. Farmers Ins. Co., Inc.,* 375 Ark. 255, 289 S.W.3d 909 (2008); *Gray v. Mitchell,* 373 Ark. 560, 285 S.W.3d 222 (2008). Appellant has produced no proof that appellees had any knowledge of any "character for negligence, recklessness, or incompetency" on the part of either Martinez or Jetton. In support of her argument to the contrary, appellant points to the fact that Martinez was uninsured for periods of time,[3] that Martinez failed to attend safety classes required by appellees, and that after the accident, Jetton's truck was determined by the Arkansas Highway Police to have been unsafe. Martinez's failures to obtain insurance or attend some safety classes do not demonstrate, in and of themselves, a character for negligence, recklessness, or incompetency. Appellant produced no evidence of any prior incidents of negligence or recklessness in which Martinez was involved. There is also no evidence that appellees were aware of the condition of Jetton's truck prior to

---

**2.** Jetton did not file a motion for summary judgment; however, the trial court attached to its order granting summary judgment a Rule 54(b) certificate, making the order final as to the parties to this appeal.

**3.** Martinez testified at his deposition that he was not sure whether he had liability insurance at the time of the accident.

the accident or that appellees were aware of Jetton at all prior to the accident.

We also hold on the record before us that the trial court properly granted summary judgment on the vicarious-liability claim. Ordinarily, one employing an independent ₅contractor is not liable for the contractor's negligence committed in the performance of the contracted work. *Shamlin v. Quadrangle Enters., Inc.,* 101 Ark.App. 164, 272 S.W.3d 128 (2008). An independent contractor is one who, exercising an independent employment, contracts to do work according to his own methods and without being subject to the control of the employer, except as to the results of the work. *Howard v. Dallas Morning News, Inc.,* 324 Ark. 91, 918 S.W.2d 178 (1996). The right to control, not the actual control, determines whether one is a servant or an independent contractor. *Id.*

Appellant argues that the facts of this case could give rise to the conclusion that Martinez was acting as an employee of appellees, thus subjecting appellees to vicarious liability for Jetton's alleged negligence. We disagree. Appellees had no direct contractual relationship at all with Jetton. As for Martinez, according to the purchase agreement, the sole extent of appellees' ability to control Martinez's operation with regard to the fulfillment of the agreement was the requirement that Martinez carry insurance. As the trial court correctly pointed out in the order granting the motion to dismiss, this is insufficient to make Martinez an employee as opposed to an independent contractor. The only additional requirement imposed on Martinez outside of the contract was a requirement that he attend safety classes and receive certain certifications. As with the requirement that Martinez obtain insurance, the safety class and certification requirement is insufficient to make Mar-

tinez an employee of appellees. Appellees had no right under the agreement, as written or modified through conduct by the parties, to dictate to Martinez the method by which he obtained or delivered the timber to the mill. Appellant emphasizes that NTLT had revoked Martinez's permission ₆to deliver timber based on a lapse in insurance and Martinez's association with a third party that NTLT felt was improper. These undisputed facts do not change the legal analysis. They do not show, nor do they tend to show, that NTLT could or did control the particulars of how Martinez hauled the timber. Clearly, Martinez was allowed, under the agreement, to perform the contracted work according to his own methods without being subject to the control of appellees. There was no evidence presented to indicate that Martinez was acting as anything other than an independent contractor in his relationship with appellees, and appellees are therefore not subject to a claim of negligence for actions undertaken by Martinez.

Affirmed.

VAUGHT, C.J., and GLADWIN, MARSHALL, HENRY, and BROWN, JJ., agree.

ROBBINS, J., concurs in part and dissents in part.

PITTMAN and HART, JJ., dissent.

JOHN B. ROBBINS, Judge, concurring in part and dissenting in part.

I concur with the majority's conclusion that summary judgment was properly granted to appellees with regard to allegations of negligent selection and retention of Martinez or Jetton, forming the direct-liability theory.

However, I dissent from the majority's conclusion that there was no evidence to support appellant's vicarious-liability theo-

ry. Appellant presented evidence of a course of dealing demonstrating that appellees exercised some degree of control over Martinez's execution of his job. Viewing the evidence and all reasonable inferences deducible therefrom in the light most favorable to the nonmovant, as we are required to do, an inference could be drawn that appellees and Martinez had amended their contractual arrangement such that a principal/servant relationship arose. A consequence of which could be that appellees became vicariously liable for the negligence of Martinez. I cannot conclude at this juncture that appellees were entitled to judgment as a matter of law on that point.

For these reasons, I concur in part and dissent in part.

JOHN MAUZY PITTMAN, Judge, dissenting.

This is an appeal from a summary judgment in a wrongful-death action arising out of alleged negligent hiring and supervision of an unlicensed, uncertified, one-armed, octogenarian truck driver. The tractor of the driver's log truck was in a state of utter and obvious disrepair. A Vienna Sausage can served as its gas cap. The truck driver was employed by Clemente "Speedy" Martinez to haul timber. Martinez had a contract with appellee NTLT that allowed Martinez to sell timber at timber mills. The contract required Martinez to obtain insurance and attend safety classes. There was evidence proffered to show that, although Martinez failed to uphold these requirements and had his privileges revoked by NTLT for safety violations, NTLT permitted Martinez to haul lumber on the day that plaintiff's decedent was killed, and that Martinez assigned the truck driver described above to do the hauling, with predictably fatal consequences.

Appellee's brief cites provisions of the contract between NTLT and Martinez to show that Martinez was an independent contractor that NTLT had no right to supervise. The contract does say this, and contains numerous hold-harmless clauses, but the fact remains that a written contract can subsequently be modified orally. *See, e.g., Shumpert v. Arko Telephone Communications, Inc.*, 318 Ark. 840, 888 S.W.2d 646 (1994). A course of dealing that repeatedly disregards a contractual stipulation can constitute a waiver or amendment of the agreement. *Hempel v. Bragg*, 313 Ark. 486, 856 S.W.2d 293 (1993). Here there was evidence to support a finding that appellee did engage in a course of dealing by which it undertook to supervise the safety of Martinez's operations, became aware of safety violations significant enough to justify suspending Martinez's contractual privileges, and reinstated Martinez without conducting an investigation.[1] There was also evidence that plaintiff's decedent was killed as the result of gross and patent safety violations on the part of Martinez's employment of a manifestly dangerous driver. I think that this presented a genuine issue of material fact as to whether NTLT was negligent in retaining Martinez after learning of his safety violations and whether NTLT had by course of conduct undertaken to supervise the safety of Martinez's operations. Summary judgment on this record was inap-

---

1. The majority correctly states that NTLT had no right under the agreement to supervise Martinez's performance of the contract, correctly notes that NTLT did in fact do so, and curiously concludes that the parties therefore, as a matter of law, did not modify the agreement by their conduct. This is a difficult concept to grasp and would benefit from a more detailed explanation.

propriate, and I would reverse and remand for trial.

HART, J., joins in this dissent.